JOHN W. MATTHYS *vs.* HENRY HORNBLOWER & another.

Suffolk.    March 21, 1916. — May 19, 1916.

Present: RUGG, C. J., LORING, BRALEY, DE COURCY, & PIERCE, JJ.

*Wagering Contracts. Stockbroker. Pleading, Civil,* Declaration. *Practice, Civil,* Auditor's report, Exceptions. *Conflict of Laws.*

Allegations in the declaration in an action of contract against a stockbroker in which the plaintiff seeks to recover sums paid to the defendant for transactions upon margins, that the plaintiff "had no intention to perform said contract" to purchase certain stocks upon margin, and that the defendant "had reasonable cause and well knew that the plaintiff had no intention to actually perform said contract," are not the equivalent of, nor can they be construed into, an affirmative allegation of the fact, which is a prerequisite to the maintenance of an action under R. L. c. 99, § 4, that at the time of making the contract the plaintiff intended that there should be no actual purchase or sale.

If, at the trial of such an action, the plaintiff testifies that he told the defendant that he wished to trade on margin, buying when he desired and selling when he desired, taking the market quotation, and, if there was a rise, to sell and to settle his account on the rise and fall of the market, and that he did not want the stock certificates, a finding is warranted that the plaintiff intended at the time of the contract that there should be no actual purchase or sale.

Findings of an auditor to whom was referred an action of contract against a stockbroker for the recovery of money paid to the defendant for transactions alleged to have been upon margins, that all the purchases and sales ordered by the plaintiff "were actual transactions," and that in "every case, whether of purchase or sale, a check for the full amount duly passed from or to the defendant as the case might be," where the auditor also finds that, at all times between

the purchase and sale of each kind of stock, the defendant had on hand or within his immediate control enough of the stock to meet the demands of all his customers including the plaintiff, are not inconsistent with other findings of the auditor in substance that, in the case of certain purchases there was no actual delivery of certificates to the defendant because, on the same date as the purchase by the defendant from the plaintiff, the defendant sold for another customer the same number of shares that he purchased from the plaintiff, and, according to the custom of brokers under such circumstances, the broker from whom the defendant purchased delivered the stock directly to the broker to whom he sold, "rather than through the defendant, thereby saving unnecessary steps, and accomplishing the same result;" and that there was for the same reason no delivery to the defendant in the case of certain sales for the plaintiff on the same days when the defendant purchased the same number of shares of the same stock for other customers.

The findings of the auditor in the above described case being the only evidence upon the issue to which they related, a verdict was held properly to have been ordered for the defendant because as a matter of law he had sustained the burden of proving under R. L. c. 99, § 4, that all the purchases and sales upon orders placed with him by the plaintiff were "actual."

In such an action the plaintiff's knowledge or ignorance of how much of the money deposited by him "was put on each security" was held not to be material to the determination of the issue of his intention at the time of the making of the contract or of the issue of the defendant's reasonable cause to believe that the plaintiff had an intention that there should be no actual sale or purchase.

An exception to the exclusion of a question at a trial will not be sustained where there is no offer of proof to show what answer to the question was expected.

In this action against a stockbroker with offices in Boston, New York and Chicago, to recover under the laws of Massachusetts certain amounts of money paid to the defendant as margins upon wagering contracts, where it appeared that the money was paid and the orders were given in Chicago, where the plaintiff lived, it was not determined but it was assumed that R. L. c. 99, § 4, applied, it being held that under the circumstances the defendant had done nothing to render him liable under the statute.

PIERCE, J.   This is an action of contract, brought by the plaintiff to recover from the defendants certain moneys paid to them in the course of certain purchases and sales of stock upon margin.

At the trial before the jury, the only evidence introduced was the testimony of the plaintiff and the auditor's report. At the conclusion of the evidence the presiding judge,* at the request of the defendants' counsel, directed the jury to return a verdict for the defendants, which was done, and the plaintiff duly excepted to the order.

The plaintiff testified that in December, 1908, and during all of the time of the transactions complained of, he lived in Chicago,

---

* *Fox*, J.

Illinois; that on or about December 1, 1908, he told the defendants in Chicago "that he wished to trade on margin, buying when he desired and selling when he desired, taking the market quotations, and if there was a rise to sell and settle his account on the rise and fall of the market; that he told the defendants' agents that he did not want the stock certificates; and that the defendants never at any time offered any stock to him, either directly or indirectly; and that the defendants' agents told him that he could do business with the defendants that way." Thereupon, he deposited with the defendants' Chicago office $2,698.64 in money, which sum was paid to and received by the defendants on margin, to secure them on such stock purchases as they might make and carry on the plaintiff's orders. Thereafter, he deposited with the Chicago office $1,000 in money and twenty-five shares of the Cumberland-Ely stock of the value of $300, as collateral for the same purpose as the original deposit.

All moneys paid and all orders given to the defendants were paid and given to them at the Chicago office. And all orders were given with the written direction that they "be executed according to the rules and customs of the Boston, New York and Chicago stock exchanges and may be through a buyer or seller contract at your discretion." The defendants had their principal office and place of business in Boston, with branches in New York, Chicago and elsewhere, and were members of the stock exchanges in those places.

The declaration is in three counts: the first count alleges that in December, 1908, the plaintiff "contracted with the defendants as stockbrokers to buy for him certain copper mining stocks upon margin, at different times thereafter, and for that purpose then and there he paid into the hands of said brokers the sum of" $2,698.64; "and that at the time of making said contract he had no intention to perform said contract by the actual receipt of said copper mining stocks and the payment of the price therefor; and that said defendants had reasonable cause and well knew that the plaintiff had no intention to actually perform said contract by the receipt of said copper mining stocks and the payment of the price therefor, wherefore . . ."

The second count is identical in its allegations except that the sum of $1,000 is stated to have been paid January 8, 1910.

The third count is like the first and second, except that in place of a payment of money it is alleged that the plaintiff assigned and transferred twenty-five shares of the Cumberland-Ely mining stock.

The answer set up a general denial, payment, account stated, accord and satisfaction, "an actual purchase of each of the securities which the plaintiff directed them to purchase, and an actual sale of each of the securities which the plaintiff directed them to sell," and also that the defendants made "a valid contract for the purchase of each of the securities which the plaintiff directed them to purchase, and a valid contract for the sale of each of the securities which the plaintiff directed them to sell."

The defendants contend that the plaintiff's declaration states no ground of action. The statement in the several counts of the declaration that the plaintiff "had no intention to perform said contract" and that the "defendants had reasonable cause and well knew that the plaintiff had no intention to actually perform said contract," was not the equivalent of nor can it be construed into an affirmative statement that the plaintiff at the time of making the contract intended "that there shall be no actual purchase or sale . . ."

The plaintiff's testimony, above quoted, warranted the submission to the jury, as an issue of fact, of the question of the plaintiff's affirmative intent "that there shall be no actual purchase or sale . . ." and the question of the defendants' "reasonable cause to believe that said intention existed."

The auditor found, apparently upon undisputed evidence, that orders for purchase and sale given to the Chicago house by the plaintiff were largely executed in Boston, although purchases in some instances were executed in New York and in Chicago. The auditor finds "all of the above purchases and sales were actual transactions. In every case, whether of purchase or sale, a check for the full amount duly passed from or to the defendants, as the case might be."

The plaintiff contends that upon the auditor's finding of fact the jury could reasonably draw a different inference of fact, and therefore, that the evidence upon the issue of actual purchases and sales should have been submitted to the jury. The facts which the plaintiff argues are inconsistent with the auditor's

conclusion of fact as stated by the auditor are as follows: "In the case of the following purchases: 100 Miami December 30th, 1908, 50 Superior & Boston November 8th, 1909, and 100 Keewenaw, January 24th, 1910, there was no actual delivery of certificates to the defendants. In each of these three instances the defendants, on each of the above dates, sold the same number of shares of these stocks as they then bought. In this way the sale offset the purchase in each case, and, according to the custom of brokers under such circumstances, the broker from whom the defendants bought delivered the stock directly to the broker to whom they sold, rather than through the defendants, thereby saving unnecessary steps, and accomplishing the same result. . . . In the case of the sales of the 100 Boston Consolidated on August 12th, 1909, and that of the 50 Keewenaw on December 8th, 1910, there was no actual delivery of certificates by the defendants. In each of these instances there was a corresponding purchase by the defendants that day of the same number of shares of these stocks, resulting in an offset, and a direct delivery by the broker from whom they bought to the broker to whom they sold, without the intervention of the defendants." These facts are not necessarily inconsistent with actual transactions of purchase and sale.

The auditor finds "that at all times between the purchase and sale of each of the above stocks the defendants had on hand, or within their immediate control, enough of said stocks to meet the demands of all their customers, including the plaintiff." That the defendants had such stock in hand or within their immediate control is not disputed. This fact being so, the result that followed the offset in the instances of purchase was that the defendants applied their own stock to the plaintiff's order, and in the case of sale were left by reason of the offset with a like number of shares to apply to the orders of other customers. The transactions are found by the auditor to have been actual and not fictitious and there is nothing in the record to show that the conclusion of fact was not warranted. *Fiske* v. *Doucette,* 206 Mass. 275. *Greene* v. *Corey,* 210 Mass. 536.

The plaintiff's knowledge or ignorance of how much of his deposit "was put on each security" does not appear to have been material to the determination of the issue of his intention at the time

of making the contract, or of the defendants' reasonable cause to believe the plaintiff had an intention that there should be neither actual sale nor purchase. There was no offer of proof of the expected answer to the question "Now, Mr. Matthys, did you ever know how much of the amounts of money that you deposited with the defendants was put in on each security or each stock alleged to be purchased?" And the exception to the refusal to permit it to be answered must be overruled.

We have considered the case at bar without regard to the form of the declaration, and on the assumption most favorable to the plaintiff, without deciding that the validity and construction of the contract as well as the rights and obligations of the parties thereto are to be determined by the laws of this Commonwealth. So considered, it follows that there was no error in the order directing the jury to find a verdict for the defendants.

*Exceptions overruled.*

*J. M. Browne,* for the plaintiff.
*H. W. Ogden,* for the defendants.