WALTER L. BARRELL & another *vs.* WILLIAM A. PAINE
& others.

Suffolk. January 14, 15, 1920. — June 22, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, PIERCE,
CARROLL, & JENNEY, JJ.

*Wagering Contracts. Husband and Wife. Agency,* What constitutes. *Practice, Civil,* Auditor's report. *Evidence,* Presumptions and burden of proof.

In an action by a husband and wife jointly against a stockbroker for money paid in transactions alleged to have been of the character described in R. L. c. 99, § 4, it appeared that the wife "never had a clear conception of the nature of these transactions, although in a general way she knew about them and authorized her husband's acts," and that, while she "never had an affirmative intent that there should not be actual purchases and sales . . . she intended to leave the . . . business to her husband." The husband had the affirmative intention, required for recovery under the statute, that there should be no actual purchase or sale of securities in the transactions. *Held,* that these facts were a sufficient basis for a finding that the husband acted as the agent for his wife and that his intention bound the defendant so far as her interests were affected.

Where an action is heard upon an auditor's report, and upon other evidence which does not contradict nor affect the findings of the auditor, the report is *prima facie* evidence and requires a judgment in accordance with its findings of fact unless, upon all the facts found, both primary and subsidiary, the report is reasonably susceptible of more than one inference.

In an action against a stockbroker for money alleged to have been paid in transactions of the character described in R. L. c. 99, § 4, which was heard by a judge without a jury upon an auditor's report and other evidence, findings of the auditor that the plaintiff's orders in the transactions in question were for purchases or sales of less than one hundred shares of a particular stock at a given time, called in the trade transactions in "odd lots," and that, subsequent to each order by the plaintiff for a purchase or sale which the defendant reported to the plaintiff had been executed by him, a certificate for the corresponding number of shares in that stock was delivered by or to the defendant to or from some other stockbroker and a check received for the price of the stock, establish the defence, stated in the statute, that actual purchases and sales were made upon the order of the plaintiff; and such findings are not affected by further findings of the auditor, that the defendant during the period covered by the plaintiff's transactions was at various intervals and in substantial amounts "short" of the stocks which he purported to be carrying for the plaintiff in the sense that on balancing up his books for the day a balance of such stocks sufficient to meet the demands of all customers then on his books was obtained only by including in the account, kept by the defendant to show his resources in such stocks, stocks owed the defendant by other brokers and stocks owed the defendant by other customers for whom the defendant had executed "short" sales.

CONTRACT upon an account annexed containing nineteen items of sums of money and securities alleged to have been paid to and dividends alleged to have been received by the defendants, a firm of stockbrokers, upon transactions within the provisions of R. L. c. 99, § 4. Writ dated April 23, 1917.

The action was referred to an auditor and afterwards was heard by *Raymond,* J., upon the auditor's report and other evidence. Material findings of the auditor and other evidence are described in the opinion. At the close of the evidence the plaintiffs asked, in requests numbered 1, 2 and 5, for rulings that, upon all the evidence as a matter of law, the plaintiffs were entitled to recover upon fifteen of the nineteen items of the account annexed to the declaration. The plaintiffs also asked for the following rulings:

"6. Upon all the evidence in the case as a matter of law the defendants have failed to prove actual purchases and sales of all the stocks ordered bought and sold for the plaintiffs' account.

"7. If the court finds that the plaintiffs gave the defendants orders to purchase stocks for the plaintiffs and subsequently covered these buying orders by corresponding orders to sell the same number and kind of stocks, without having actually received from or delivered to the plaintiffs certificates for any of those stocks, such transactions would be *prima facie* evidence within the meaning of R. L. c. 99, § 6, that the plaintiffs had an intention that there should be no actual purchase or sale and that the defendants had reasonable cause to believe that said intention existed.

"8. If the court finds that the orders for the original purchases of shares of Studebaker, Lackawanna Steel and Baldwin Locomotive were made with the intent on the part of the plaintiffs that they should not receive from the defendants any of the shares represented by said orders, but with an intention to cover those orders later by corresponding orders to sell, and to make such profit or loss as might result therefrom without having actually received or delivered any of the shares, and that the defendants had reasonable cause to believe that such was the plaintiffs' intention, then these were wagering transactions."

These requests of the plaintiffs were granted.

The defendants asked for and the judge granted the following rulings:

"9. An actual purchase does not become unreal by a subsequent use of the customer's stock by the broker.

"10. An actual purchase does not become unreal by a subsequent use of the customer's stock by the broker, and this is so even if the effect is to make the broker short as to his other customers."

The defendants asked for and the judge refused to grant the following rulings:

"3. All transactions were accompanied by actual payments and delivery of certificates and therefore were not within R. L. c. 99, § 4."

"6. The purchases made by the defendants for the plaintiffs were executed by actual delivery of certificates from the selling broker to the defendants and payment therefor by check, and are actual purchases.

"7. The sales made by the defendants for the plaintiffs were executed by actual delivery of certificates from the defendants to the purchasing broker and payment therefor by check, and are actual sales."

"11. The fact, if it be a fact, that the defendants at the time of the execution of the purchases for the plaintiffs, which were consummated by delivery of certificates and payment therefor by check, did not have enough stock on hand or within their control sufficient to deliver to all their customers does not render the purchases unreal under the laws of New York or Massachusetts.

"12. The fact, if it be a fact, that the defendants at the time of the execution of the sales for the plaintiffs, which were consummated by delivery of certificates and payment therefor by check, did not have enough stock on hand or within their control sufficient to deliver to all their customers, does not render the sales unreal under the laws of New York or Massachusetts.

"13. The fact, if it be a fact, that the defendants not having sufficient stock of their own, used stock of other customers in making delivery on account of a sale of stock which they had sold on account of the plaintiffs' order, will not make the transaction unreal.

"14. The fact, if it be a fact, that the defendants on the same day that they purchased certain stock for the plaintiffs may have

sold stock short for some other customer, will not make the purchase for the plaintiffs unreal.

"15. As the plaintiffs' transactions were not executed through the clearing house, where the purchases of the broker are set off against his sales and neither are executed by actual delivery and payment, and where the actuality of the purchase by the broker depends upon whether or not as a result of it he has in his hands stock to deliver to all his customers for whom he had bought and was carrying the stock, and as instead, subsequent to each order for a purchase or sale which the defendants reported to the plaintiffs had been executed by them (that is, within twenty-four hours, except that sales made the day before a holiday were completed the day after the holiday and sales on Friday or Saturday were completed Monday), certificates for a corresponding number of shares in that stock were delivered by or to the defendants, to or from some other broker and a check received for the price of the stock, such transactions are actual."

The judge found for the plaintiffs in the sum of $1,941.41 upon the fifteen items named in their requests for rulings numbered 1, 2 and 5; and the defendants alleged exceptions.

The case was argued at the bar in January, 1920, before *Rugg*, C. J., *Braley, De Courcy, Carroll*, & *Jenney*, JJ., and afterwards was submitted on briefs to all the Justices.

*W. P. Everts*, for the defendants.

*W. R. Bigelow*, for the plaintiffs.

RUGG, C. J. The plaintiffs, who are husband and wife, seek in this action to recover amounts paid to and dividends received by the defendants, who are stockbrokers, upon certain transactions in stocks alleged to be within R. L. c. 99, § 4. That section is in these words: "Whoever upon credit or upon margin contracts to buy or sell, or employs another to buy or sell for his account, any securities or commodities, intending at the time that there shall be no actual purchase or sale, may sue for and recover in an action of contract from the other party to the contract, or from the person so employed, any payment made, or the value of anything delivered, on account thereof, if such other party to the contract or person so employed had reasonable cause to believe that said intention existed; but no person shall have a right of action under the provisions of this section if, for his account,

such other party to the contract or the person so employed makes, in accordance with the terms of the contract or employment, personally or by agent, an actual purchase or sale of said securities or commodities, or a valid contract therefor." The case was sent to an auditor and then was heard upon the auditor's report and other evidence by a judge of the Superior Court without a jury.

It appears that in August, 1915, Mr. Barrell personally began trading in stock on margin with the defendants, but it was not until May 10, 1916, that "he had an affirmative intention that there should be no actual . . . purchase and sale and . . . the defendants had reasonable cause to believe that he had that intent." Mrs. Barrell, whose name first occurs in the account on December 14, 1915, "never had a clear conception of the nature of these transactions, although in a general way she knew about them and authorized her husband's acts," and while she "never had an affirmative intent that there should not be actual purchases and sales . . . she intended to leave the . . . business to her husband." This was sufficient basis for a finding that the husband acted as the agent for his wife and that his intention bound the defendants so far as her interests are affected. *Marks* v. *Metropolitan Stock Exchange*, 181 Mass. 251, 255. *Chandler* v. *Prince*, 214 Mass. 180, 183.

A considerable number of transactions took place between the parties. So far as concerns those upon which the plaintiffs now rely, the contention of the defendants is that the affirmative defence of "actual purchase or sale" of the securities was made out in accordance with the statute. Upon that point the finding of the auditor is: "It is . . . to be noted that all the plaintiffs' transactions with the defendants were orders for the purchase or sale of less than one hundred shares of a particular stock at a given time. Such transactions are called in the trade transactions in 'odd lots' and are not executed through the stock exchange clearing house either in New York or Boston. Ordinarily they are executed by actual delivery of certificates from the selling broker to the buying broker and payment therefor by check. In large offices like that of the defendants, this is the practice even when the same number of shares of the same stock are sold to and bought from another broker on the same day. This is

because in a business as large as that conducted by the defendants the deliveries on sales are carried out by different clerks from those who draw the checks. If the defendants were temporarily without certificates of the requisite denomination and of the required stock, it might happen that a certificate so received would be returned to the same broker it came from. There is no evidence that in any instance in this case there was not a physical delivery of a certificate for the stock bought or sold within the time thereafter permitted by the custom of the business, and I find as a fact that subsequent to each order by the plaintiffs for a purchase or sale which the defendants reported to the plaintiffs had been executed by them (that is within twenty-four hours except that sales made the day before a holiday were completed the day after the holiday and sales on Friday or Saturday were completed Monday), a certificate for the corresponding number of shares in that stock was delivered by or to the defendants to or from some other stockbroker and a check received for the price of the stock. I further find that at all times thereafter during the period covered by the transactions with the plaintiffs, the defendants had on hand or under their control shares in the stocks they purported to be carrying for the plaintiffs equal in number to those to which the plaintiffs were entitled."

This is an explicit finding. It discloses a real and tangible transfer of a full and complete title to an existing, defined and certain security, which actually was delivered to the purchaser pursuant to such transfer. It shows an actual purchase or sale, as those words are used in the statute, respecting every transaction between the plaintiffs and the defendants. It would be too narrow an interpretation of this finding to say that these actual deliveries of certificates found to have taken place in the case of every transaction in which the plaintiffs were concerned did not relate to the orders of the plaintiffs. It seems to us that this finding fairly must be taken to mean that the certificates were delivered in consequence and on account of the plaintiffs' orders. The auditor's report is *prima facie* evidence and requires a judgment in accordance with its findings of facts unless taking all the facts found both primary and subsidiary the report is reasonably susceptible of more than one inference. *Wakefield* v. *American Surety Co.* 209 Mass. 173, 176. See *Peaslee* v. *Ross*, 143 Mass.

275. The force and effect of this definite finding is not broken by other evidence introduced at the trial. Upon this branch of the case the auditor's report was not contradicted nor affected by evidence outside the report. This finding is at least as favorable to the defendants in this particular as those revealed in *Matthys* v. *Hornblower*, 224 Mass. 248.

The auditor's other findings of facts did not shake the force of this one already quoted. In this connection the other findings of the auditor were these: "It appeared, however, that both the defendants and their correspondent New York brokers during the period covered by the plaintiffs' transactions with the defendants, were at various intervals and in substantial amounts 'short' of the stocks which they purported to be carrying for the plaintiffs in the sense that on balancing up their books for the day a balance of such stocks sufficient to meet the demands of all customers then on their books was obtained only by including in the account kept by the defendants to show their resources in such stocks, stocks owed the defendants by other brokers and stocks owed the defendants by other customers for whom the defendants had executed 'short' sales; . . . I find, if it is within my province so to find, that balances so arrived at were so frequent and in such quantities as to characterize the account and indicate a usual course of business of the defendants and Harris, Winthrop and Company. Upon the understanding that as a matter of law short sales of other customers cannot be set off against orders for purchases so as to strike a balance as above described in proving the defence of actual purchases and sales under the above statute, upon the foregoing facts I find, if it is an issue of fact which it is within my province to pass upon, that the defendants did not make actual purchases and sales of the stocks they were ordered by the plaintiffs to buy and sell and carry on margin for the plaintiffs." So far as this is a finding of fact, it is that, taking into account all the transactions of the defendants, they often were short of stocks in which the plaintiffs were speculating, so that they would have been unable to respond to the just demands of all their customers. That circumstance would be of great significance if the defendants were unable to prove a "real and tangible transfer of a full and complete title to an existing, defined and certain security" in response to every order of the

plaintiffs. *Fiske* v. *Doucette*, 206 Mass. 275, at page 283. That circumstance, however, is of no consequence in view of the specific fact found by the auditor, and not contradicted, that in every instance there was an actual transfer of title to and manual delivery of a certificate of stock pursuant to every order for purchase or sale by the plaintiffs. In the presence of that fact, indisputable on this record, relations of the defendants to other customers were immaterial. Such a finding of fact was wholly absent in *Fiske* v. *Doucette*, 206 Mass. 275, *Greene* v. *Corey*, 210 Mass. 536, and *Adams* v. *Dick*, 226 Mass. 46. In each of those cases the defence of actual purchases and sales was sought to be maintained by resort to other kinds of evidence than showing a manual transfer of identified certificates of stock together with complete transfer of title. The defendants in those cases sought to establish the statutory defence by showing transactions upon the stock exchange without other proof of actual purchases or sales. Those transactions, as pointed out in those opinions, and especially in *Greene* v. *Corey*, 210 Mass. 536, at page 548, might have been fictitious and not real. The principles established in those cases were applicable to such facts as there appeared. They are not controlling as to radically different facts here disclosed. It was in reference to the kind of defence put forward in each of those cases that it was said in substance in each of those opinions that the defence allowed by the statute is not made out unless the broker shows that he has under his immediate control certificates of stock sufficient to meet the demands of his customers. The final sentence from the portion of the auditor's report last quoted was not a simple finding of fact but was expressly predicated upon a principle of law sound in itself but not relevant to the definite facts previously found.

It follows that, while the judge rightly granted nine and ten of the defendants' requests for rulings, he erred, in the opinion of a majority of the court, in granting requests 1, 2, 5 and 6 of the plaintiffs.

*Exceptions sustained.*