### FRANCIS W. ADAMS *vs.* CHARLES HAYDEN & others.

Suffolk. October 18, 1920. — November 23, 1920.

Present: RUGG, C. J., DE COURCY, CROSBY, CARROLL, & JENNEY, JJ.

*Wagering Contracts. Stockbroker. Practice, Civil,* Auditor's report. *Evidence,* Presumptions and burden of proof.

From findings of an auditor, to whom was referred an action under R. L. c. 99, § 4, for cash paid and securities delivered by the plaintiff to the defendant, a stockbroker, it appeared that the course of dealings between the parties throughout indicated genuine transactions and not mere wagers under the guise of contracts for the purchase and sale of securities, and on the entire evidence before him

the auditor found "that the plaintiff did not at any time intend that there should not be any actual purchases or sales by the defendants, of the stocks he ordered bought or sold; that in some cases he intended the stocks should be bought or sold by the defendants as ordered; and in other cases he had no intention as to whether the defendants should or should not make actual purchases or sales in carrying out his orders." In the report there also were findings "that the plaintiff gave orders in a few cases to sell securities he did not at the time own, and that in numerous cases he made settlements without the completion of the purchase or sale of the securities ordered to be bought or sold;" and "the plaintiff did not intend to demand or receive certificates of the stocks he ordered to be purchased, but to give orders later to sell the same amount of stocks, hoping to make a profit by selling at an increased price." The evidence before the auditor was not reported. A judge, who heard the action upon the auditor's report and a stipulation as to certain evidence which was before the auditor, found for the defendant. *Held*, that

(1) The finding, "that the plaintiff gave orders in a few cases to sell securities he did not at the time own, and that in numerous cases he made settlements without the completion of the purchase or sale of the securities ordered to be bought or sold" was, under § 6 of the statute, at most *prima facie* evidence of the apparent intent required by the statute, and did not as a matter of law require a finding of such intent if on all the evidence a contrary finding was warranted;

(2) In the circumstances and in the absence of a report of the entire evidence before the auditor, the auditor's conclusion of fact, that the plaintiff did not at any time intend that there should not be actual purchases or sales by the defendant, must stand because it was not as a matter of law inconsistent with other facts found by him;

(3) The statute did not make the defendant liable merely upon his carrying on margin securities which he had purchased for his customer;

(4) The trial judge was warranted in finding for the defendant.

CONTRACT for $60,426.06, upon an account annexed containing items of cash paid and of securities delivered to the defendants and of items called "equity on sale of" certain securities.   Writ dated March 22, 1917.

The action was referred to an auditor, and, after the filing of the auditor's report, was heard by *Hitchcock*, J., without a jury, upon the auditor's report and a stipulation as to certain evidence before the auditor.   The material findings of the auditor and facts agreed upon are described in the opinion.

The plaintiff moved that, upon all the evidence, a finding should be entered in his favor; and also requested the following rulings:

"1. If the court finds that there were numerous settlements in the account, within the meaning of R. L. c. 99, § 6, from substantially the opening of the account until its close, and constituting a very large proportion of the transactions, then upon all the evi-

dence in this case the plaintiff is entitled to recover as a matter of law.

"2. There is no evidence in the case as a matter of law to warrant a finding that the defendants made actual purchases and sales upon any of the plaintiff's orders where settlements were made.

"3. The execution of orders to buy or sell stocks on the stock exchange, is not of itself sufficient evidence of actual purchases and sales by the defendants."

"6. If the court finds that the plaintiff intended to enter into wagering transactions with the defendants, and that the defendants had reasonable cause to believe that such was his intent, it is not necessary for the plaintiff to prove further that he had a specific intent that the defendants should not make actual purchases and sales.

"7. There is no evidence in the case as a matter of law to warrant a finding that the defendants made actual purchases or sales upon any of the plaintiff's orders to sell stocks in cases where he had no such stocks in his account with the defendants at the time of giving the order to sell and did not at any time deliver certificates of those stocks to the defendants, but afterwards covered the selling order by a corresponding order to buy the same stocks.

"8. If the court finds that a large proportion of the plaintiff's transactions with the defendants were either settlements or orders to sell stocks which the plaintiff did not own at the time of giving the order, so far as was disclosed or known to the defendants, then the plaintiff's entire account was tainted with illegality.

"9. The plaintiff is entitled to recover as damages all payments made and the value of the securities delivered by him to the defendants.

"10. The defendants cannot reduce the amount of damages by any payments which they made to the plaintiff, if their payments to the plaintiff were not in fact on account of the principal sums paid in by him, but were on account of the unlawful transactions."

As to the sixth ruling requested, the judge stated, "Court does not so find;" he also denied the plaintiff's motion and requests for the rulings above described and found for the defendants; and the plaintiff alleged exceptions.

*W. R. Bigelow,* for the plaintiff.

*C. F. Choate, Jr.,* (*H. W. Beal & J. H. Powers* with him,) for the defendants.

DE COURCY, J.  The plaintiff dealt with the defendants as his bankers and brokers.  In this action he seeks to recover under the provisions of R. L. c. 99, § 4, claiming that, when he ordered the defendants to buy and sell stocks on his account, he intended that there should be no actual purchases or sales, and that the defendants had reasonable cause to believe that such intention existed.  The case was submitted to the Superior Court on an auditor's report and a stipulation as to certain evidence before the auditor; and the judge found for the defendants.

The main contention of the plaintiff is that on the facts found by the auditor he was entitled as matter of law to a decision in his favor.  He bases this claim on a single statement in the auditor's report "that the plaintiff gave orders in a few cases to sell securities he did not at the time own, and that in numerous cases he made settlements without the completion of the purchase or sale of the securities ordered to be bought or sold."  This must be considered with reference to the facts on which it is based, and in connection with other findings of the auditor on the same subject matter.  At most, by virtue of § 6 of the statute, it was *prima facie* evidence that the plaintiff did not intend that actual purchases and sales should be effected.  After giving due weight thereto, the auditor found on the entire evidence before him "that the plaintiff did not at any time intend that there should not be any actual purchases or sales by the defendants, of the stocks he ordered bought or sold; that in some cases he intended the stocks should be bought or sold by the defendants as ordered; and in other cases he had no intention as to whether the defendants should or should not make actual purchases or sales in carrying out his orders."

The evidence on which the auditor came to this conclusion is not before us.  It must stand unless we can say as matter of law that it is inconsistent with the other facts found by him.  The general course of business between the parties, so far as disclosed by the entire report, indicates that genuine purchases and sales were contemplated, and were positively intended by the plaintiff in all but a few special cases.  The dealings began on

November 3, 1911, when the plaintiff delivered to the defendants certain certificates of stock. On or before November 13, they had sold all of this stock on order of the plaintiff for $85,575.50. On November 11 he drew from them $10,000 in cash. On November 29 they received from the Exchange Trust Company one hundred shares of Great Northern stock, paying therefor, by order of the plaintiff, $12,000; and on December 16, 1911, by his order the defendants received from said trust company one hundred shares of Reading stock, and paid therefor $5,500. Other orders to buy and sell were given by him. On January 4, 1913, this account was closed, and the plaintiff was paid the amount owed. The second account was opened on September 12, 1913, when the plaintiff deposited $5,000; and was closed January 8, 1914. The last account was opened on June 26, 1914, and was closed on March 3, 1917. During the period covered by the declaration, the plaintiff gave orders to the defendants to buy and sell seventeen thousand nine hundred and twenty shares, at a total value slightly exceeding $3,101,000. In some cases the plaintiff paid the full purchase price, in other cases substantial amounts on account, for the stocks ordered to be purchased. The course of dealings throughout indicates genuine transactions, and not mere wagers under the guise of contracts for the purchase and sale of stocks. The plaintiff received dividends on stocks purchased for him and held in his account; and interest was charged when the balance of the account was against him.

The auditor found, "The plaintiff did not intend to demand or receive certificates of the stocks he ordered to be purchased, but to give orders later to sell the same amount of stocks, hoping to make a profit by selling at an increased price." The statute does not prohibit a broker from carrying on margin the stocks he has purchased for his customer. He further found, "In twelve (12) cases stock ordered by the plaintiff to be sold by the defendants was delivered to the defendants by the plaintiff, or by some one on the direction of the plaintiff, either before or after the order to sell. The plaintiff claims that in fourteen (14) cases he gave to the defendants orders to sell stock which he did not own. In eleven (11) of these cases I find that the plaintiff, at the time the order was given to sell, either owned the stock ordered to be sold or had purchased it of some broker other than the defendants and

had it in his control in an account with another broker or a Trust Company." In only three cases (and these do not appear in the declaration) did the plaintiff order the sale of stocks that he did not own, and in each of these a corresponding order to purchase was given within a few days. We cannot say, as matter of law, that the findings are inconsistent with the conclusion reached by the auditor.

The auditor's report made out a *prima facie* case for the defendants. At the trial in the Superior Court the plaintiff offered no additional evidence except certain letters. These were before the auditor, and tend to confirm his findings, by showing that the plaintiff intended the actual sale and delivery of the shares therein referred to. In addition to finding generally for the defendants, the trial judge filed a memorandum, in which he affirmed the finding of the auditor as to the plaintiff's intention, and also found that "the defendants did not have reasonable cause to believe that the plaintiff had any such intention," (i. e. an intention that there should be no actual purchase or sale of stock.) While this "Memorandum" is no part of the record (*Cohen* v. *Berkowitz*, 215 Mass. 68, 71), the general finding for the defendants "imports a finding of all the subsidiary facts essential to that conclusion." *Adams* v. *Dick*, 226 Mass. 46, 53. Assuming then that the auditor's finding on which the plaintiff relies, as to three alleged short sales, and the settlements made without the completion of the purchase or sale of the securities, created a *prima facie* case in his favor, under R. L. c. 99, § 6, they were not conclusive; and their effect was overcome in the mind of the auditor by other evidence before him. Apparently he was not satisfied that even in these few transactions the plaintiff intended that actual sales should not be effected, especially in view of the general course of his dealings from the beginning, which indicated that real transactions were contemplated. The trial judge was warranted in finding that the plaintiff had failed to make out a case under the wagering statute. *Chandler* v. *Prince*, 217 Mass. 451; *S. C.* 221 Mass. 495, 506. *Zembler* v. *Fitzgerald*, 234 Mass. 236. The facts as found distinguish this from cases like *Adams* v. *Dick*, 226 Mass. 46, and *Houghton* v. *Keveney*, 230 Mass. 49.

What has been said disposes of the plaintiff's exceptions to the judge's denial of his motion for a finding, and the refusal

to give the requests numbered 1 and 8. Those numbered 9 and 10 relate to damages, and were rendered immaterial by the finding for the defendants. In view of the finding that "the plaintiff did not at any time intend that there should not be any actual purchases or sales by the defendants, of the stocks he ordered bought or sold," it is unnecessary to consider requests 2, 3 and 7, which are based on the affirmative defence of actual sales.

*Exceptions overruled.*