GEORGE B. HARRIS & others *vs.* SIMON FRIEDMAN.
SIMON FRIEDMAN *vs.* GEORGE B. HARRIS & others.

Suffolk.    March 6, 1923. — June 1, 1923.

Present: RUGG, C.J., BRALEY, DeCOURCY, CROSBY, & PIERCE, JJ.

*Stockbroker. Contract,* Performance and breach.

If a stockbroker was employed by a customer to make purchases and sales of securities for him on a marginal account and nothing was said between them other than the request by the customer to the broker to make such purchases and sales, the broker is not liable in an action of contract brought against him by the customer if no fraud on his part is shown and if an audi-

tor, to whom the action was referred and upon whose findings alone it was heard, found in substance that all orders of the customer for purchases of securities were duly executed by the broker and certificates for the securities purchased were duly received by the broker, that all orders of the customer for sales of securities were executed by the broker and certificates of securities, delivered by the broker in pursuance of such sales, were either the identical certificates which had been purchased by him for the customer's account or were certificates into which such certificates originally purchased had been converted, and that, from the time of purchase to the time of sale under orders by the customer, such identical certificates purchased or the certificates into which some of them had been transferred, as above stated, were always within the actual possession or control of the stockbroker.

In the circumstances above described, the broker may maintain an action against the customer for a debit balance shown by the account.

CONTRACT by a firm of stockbrokers doing business under the name, Blake Brothers and Company, against a customer for $857.09, alleged to be a balance due on an account of transactions carried on by the plaintiffs for the defendant. Writ dated November 12, 1920. Also an action of

CONTRACT by the defendant in the first action against the plaintiffs therein upon an account annexed stating merely securities and cash " on marginal transactions," amounting to $6,380. Writ dated November 22, 1920.

In the Superior Court, the action was referred to an auditor. Material findings by the auditor are described in the opinion. The action was tried before *Morton,* J. The auditor's report was the only evidence. The judge ordered a verdict for the plaintiffs in the first action in the sum of $927.50, and for the defendants in the second action, and reported the actions to this court for determination.

*W. R. Bigelow,* (*S. Markell* with him,) for Friedman.

*R. G. Dodge,* (*H. K. Rising* with him,) for Harris and others.

DeCOURCY, J. The plaintiffs in the first case, constituting the firm of Blake Brothers and Company, stockbrokers (herein referred to as the plaintiffs), seek to recover from their customer, Friedman (referred to hereafter as the defendant), the balance alleged to be due on his margin account with them. In the cross action Friedman sues to recover from the brokers a sum representing the securities and cash he had deposited with them, on the ground that they had failed to make actual purchases and sales on his

orders, and to carry the securities for him in accordance with their alleged contract. The cases were tried together. The only evidence introduced in the Superior Court was the auditor's report: and verdicts were ordered in each case for the brokers, in accordance with the auditor's findings.

The auditor found: " When Friedman employed the brokers to make purchases and sales as above set forth, there was nothing said between him and the brokers other than his request to them to make such purchases and sales." His report further states: " There were forty-six different orders for the purchase or sale of stocks given by Friedman to the brokers. I find that all orders for the purchase of stocks so given by Friedman were duly executed by the brokers, and certificates for the stocks purchased were duly received by the brokers. I find that all orders for sales of stocks given by Friedman to the brokers were executed by the brokers, and the certificates of stocks delivered by the brokers in pursuance of such sales were, with the exceptions hereinafter noted, either the identical certificates which had been purchased by them for Friedman's account or certificates into which such certificates originally purchased had been converted." In case of dividend paying stocks, if dividend days were approaching, new certificates in the name of the brokers were obtained through the transfer offices. " The said identical certificates purchased or the certificates into which some of them had been transferred, as above stated, from the time of purchase to the time of sale were always within the actual possession or control of the brokers." When, in the ordinary course of business, some of the certificates were pledged with banks it was always under agreements giving the brokers the right to withdraw them by substituting other collateral. And the auditor expressly finds that the brokers " always had in their possession or control, available for delivery to Friedman or upon his order, shares of stock in the companies and to the amount ordered by Friedman." In short, it appears that in every instance there was an actual delivery or receipt of certificates, and that all the purchases and sales ordered were actually made.

Although by the express terms of their contract the brokers did not agree to do anything more than make purchases and sales, it is contended by Friedman that the finding of the auditor on this point imports that the brokers should also carry the stock ordered. Assuming that under the contract of employment there was an implied obligation on the part of the brokers to carry the shares bought for Friedman until he should order them sold (see, however, *Weisberg* v. *Hunt,* 239 Mass. 190), this obligation was fully performed. As already stated, the brokers " always had in their possession or control, available for delivery to Friedman or upon his order, shares of stock in the companies and to the amount ordered by Friedman." The fact that some of the certificates were at times pledged with banks as security for loans, with a right to withdraw the same, did not put them out of the " control " of the plaintiffs. *Chase* v. *Boston,* 180 Mass. 458.

As the plaintiffs fully carried out their contract with the defendant, and " there was an actual transfer of title to and manual delivery of a certificate of stock pursuant to every order for purchase or sale " by the defendant, the relations of the plaintiffs to other customers were immaterial. In other words, in the case here disclosed, it was not necessary for the brokers to show that they had within their control certificates of shares of the kind they were carrying for Friedman sufficient to meet their commitments for all their customers. *Barrell* v. *Paine,* 236 Mass. 157, 164. *Crehan* v. *Megargel,* 235 Mass. 279, 283.

As to the cross action. The case was not one under the wagering act, G. L. c. 137, §§ 4–7. It was not brought to recover for any damages suffered by breach of contract. Friedman cannot recover the value of the money and securities deposited by him because actual purchases and sales were made by the brokers pursuant to his orders. They fully performed their obligations to him, and no fraudulent conduct on their part is shown.

In accordance with the report, the entry in each case must be

*Judgment on the verdict.*