Lyda F. Ryan *vs.* Geoffrey G. Whitney & others.

Suffolk.   March 22, 23, 1926. — October 14, 1926.

Present: Braley, Crosby, Pierce, Carroll, & Wait, JJ.

*Wagering Contract. Stockbroker. Practice, Civil,* Auditor's report. *Evidence,* Presumptions and burden of proof, Findings by auditor.

Where an action of contract which has been heard by an auditor afterwards is tried before a jury upon the auditor's report and other evidence, facts found by the auditor must control the disposition of the action unless they are contradicted or controverted by the other evidence.

An auditor, by whom was heard an action against a Boston stockbroker under G. L. c. 137, § 4, for the value of property delivered to the defendant in alleged transactions under the statute, found that the transactions were carried on by the defendant through New York correspondents; that the defendant understood and the plaintiff intended that the plaintiff's orders to sell or to purchase stocks should be consummated in accordance with the rules and customs of the New York Stock Exchange, of its clearing house, and of brokers, and that

actual purchases and sales with deliveries in accordance with those rules and customs should be made; and that the transactions all were "actual *bona fide* sales or purchases followed by actual deliveries of stock certificates and payment by specific check or by settlement of balances between brokers, in accordance with the rules of the stock exchange, and their customs," and found for the defendant. There followed a trial before a jury upon the auditor's report and other evidence. The plaintiff, though called as a witness, did not testify that she intended that there should be no actual purchases or sales. It appeared that as between the plaintiff and the defendant no certificate of shares passed, and that after each transaction the plaintiff was given a notice containing an agreement "that the brokers are not required to have at all times under their control free from all demands of other customers, securities of which, upon payment, the customer may be entitled to demand delivery." *Held*, that

(1) The quoted provision in the notice neither contradicted nor controlled findings in the auditor's report that the plaintiff intended that actual sales and purchases should be made and that the defendants had reasonable cause so to believe and did so believe;

(2) The fact, that no securities passed in settlement between the plaintiff and the defendant, had no *prima facie* force as proof of intent and cause to believe, since § 6 of G. L. c. 137 did not apply where actual transactions relieving from liability under § 4 had taken place;

(3) There having been a finding by the auditor of actual purchases and sales, a further finding, that the defendant did not at all times during the period of the transactions have in his own possession sufficient of any of the stocks which he was carrying for the plaintiff to cover his obligations in the respective stocks to all his customers if simultaneous demands for delivery had been made, did not require submission to the jury of the question whether actual sales and purchases were in fact made;

(4) The mere fact, that in certain of the transactions in question a balance was struck on the purchase price, was not evidence that such transactions were not actual;

(5) The fact that certain of the transactions were the only ones in which the broker took part on the day in question did not raise a question for the jury.

CONTRACT against a firm of stockbrokers doing business under the name and style of Whitney and Elwell, for $4,107.50 with interest, with a declaration as amended in two counts, described in the opinion. Writ dated January 8, 1923.

In the Superior Court, the action was referred to an auditor. Material findings by the auditor are stated in the opinion. The provisions found by the auditor to have been upon the confirmation notice sent to the plaintiff after each transaction were as follows:

"It is agreed between the customer and the undersigned brokers: (a) that all orders for the purchase and sale of securities are received and executed subject to the rules and customs of the Boston and New York Stock Exchanges (and their Clearing Houses) with the distinct understanding that actual delivery is contemplated;

"(b) that all securities held as collateral on the customer's marginal account may be used by the brokers in their general loans, or in the making of loans and deliveries, and that the brokers are not required to have at all times under their control free from all demands of other customers, securities of which, upon payment, the customer may be entitled to demand delivery.

"(c) that the brokers may close out the whole or any part of the customer's marginal account, by buying or selling at public or private sale without further call or notice to the customer, whenever, in the judgment of the brokers, it may be necessary for their protection."

The action was tried on the auditor's report and other evidence before *Whiting*, J., by whom a verdict was ordered for the defendants. The plaintiff alleged exceptions.

*W. R. Bigelow*, for the plaintiff.

*M. Jenckes*, for the defendants.

WAIT, J. The plaintiff seeks recovery of payments made by her to the defendants in stock transactions which she claims were wagering transactions obnoxious to G. L. c. 137, § 4. After a report by an auditor who found for the defendants, the case was tried before a jury upon the auditor's report and other evidence. At the conclusion of the evidence, the plaintiff elected to abandon her count at common law and to rely solely upon her count under the statute. The judge directed a verdict for the defendants. The plaintiff contends that this ruling was wrong, and that she was entitled to go to the jury upon the issues of her intent that there should be no actual purchases or sales upon her orders to buy or to sell stocks, of the defendants' reasonable cause to believe such to have been her intent, and of the making by the defendants of actual purchases and sales within the meaning of the statute.

In early October, 1922, she deposited fifty shares of American Can Company with the defendants as margin for her transactions and took a receipt which reserved to the defendants the right to transfer, sell, pledge or use those or any other shares of stock in any way without further notice. She was familiar with margin dealings.

There were eight transactions by the defendants upon the account: six upon orders, either to buy or sell stocks, given by the plaintiff, and two, by the defendants in protecting themselves upon a weak market after a failure by the plaintiff to supply further margin upon request. There were no short sales. Other than the original deposit of the Can Company stock, no deliveries of stock between plaintiff and defendants took place. No request therefor was made by the plaintiff and no tender thereof was made by the defendants. In every case the purchase or sale was made in New York by correspondents of the defendants, who knew nothing of the plaintiff; who made no delivery of certificates to the defendants in Massachusetts, and, except the receipt of the Can Company stock, received no certificate from them from Massachusetts; and who entered and settled the various transactions upon general accounts with the defendants, under which at all times during the period covered by the declaration, the defendants would have been entitled to immediate delivery of at least one thousand shares of the stock dealt in. Immediately upon each sale or purchase in New York, the plaintiff was sent a confirmation, and every month she was sent a statement of her account. Each confirmation bore the notice set out by the auditor in his report with which she was familiar and to which she made no objection. There was no evidence in regard to the state of the accounts of the New York brokers with their customers other than the defendants, or of their ability at all times to meet simultaneous demands of all their customers for the delivery of certificates of stock. The auditor ruled such evidence immaterial.

The auditor's report described in detail each transaction of sale or purchase; showing, in each case, delivery in New York to or by the broker, of certificates for the stock so

bought or sold and a payment therefor either by specific check or by settlement of money balances in accord with the rules and customs of the exchange and of brokers. The transactions in three instances were the only dealings in the particular stock executed by the broker upon that day.

The auditor found that the defendants understood and the plaintiff intended that the plaintiff's orders to sell or to purchase stocks should be consummated in accordance with the rules and customs of the New York Stock Exchange, its clearing house, and of brokers, and that actual purchases and sales with deliveries in accordance with those rules and customs should be made. He further found that all the purchases and sales made by the defendants through their New York brokers were actual *bona fide* sales or purchases followed by actual deliveries of stock certificates and payment by specific check or by settlement of balances between brokers, in accordance with the rules of the stock exchange, and their customs as described in his report. He found also that the defendants at all times while they were carrying Butte and Superior stock for the plaintiff had in their own possession sufficient of that stock to make delivery to the plaintiff had she demanded it and paid the price; that they did not at all times during the period of the transactions have in their own possession sufficient of any of the stocks which they were carrying for the plaintiff to cover their obligations in the respective stocks to all their customers if simultaneous demands for delivery had been made; and that at all times during such period they had in their own possession and held by their New York brokers subject to immediate delivery and with sufficient credit balance in their account to entitle them to such delivery, sufficient to cover all their obligations to all their customers including the plaintiff if simultaneous demands for delivery had been made.

There was no evidence to contradict or control the auditor's findings of fact in regard to the method of dealing; the usages and customs of brokers and of the stock exchange; the details of the purchases and sales with the orders, confirmations, statements, transactions of the brokers, deliveries, payments

and settlements connected therewith. The plaintiff, though called as a witness, did not testify that she intended that there should be no actual purchases or sales. She contends, however, that the provisions of the confirmation notices "that the brokers are not required to have at all times under their control free from all demands of other customers, securities of which, upon payment, the customer may be entitled to demand delivery," when taken with the other facts found by the auditor, entitle her to go to the jury on the question of her intent that there should be no actual purchases or sales and of the defendants' reasonable cause to believe that she so intended, in spite of his finding as facts that she intended that actual sales and purchases be made and that the defendants had reason so to believe.

The facts found by the auditor are *prima facie* true. G. L. c. 221, § 56. They must govern the disposition of the case unless they are contradicted or controlled by other evidence. *Title Guaranty & Surety Co.* v. *Ley & Co. Inc.* 238 Mass. 113, 117. The provision in question is an evidentiary fact to be weighed in arriving at the intent of the plaintiff and the reasonable cause of belief of the defendants, but it neither contradicts nor controls findings that the plaintiff intended that actual sales and purchases should be made and that the defendants had reasonable cause so to believe and did so believe. See *Adams* v. *Hayden*, 236 Mass. 454. It is consistent with such findings. A broker who has made an actual purchase or sale for a customer may yet be unable at some times while the customer's account is open to meet simultaneous demands from all his customers for deliveries of the particular stock. There is nothing to the contrary in *Greene* v. *Corey*, 210 Mass. 536, 548, or *Fiske* v. *Doucette*, 206 Mass. 275. They deal with the question whether an actual sale or purchase has in fact been made. The provision gains no additional force from the fact that as between the plaintiff and defendants no certificates passed. That is immaterial. *Zembler* v. *Fitzgerald*, 234 Mass. 236, 245, and cases cited. In the instant case the fact that no securities passed in settlement between the plaintiff and defendants, if it had been material, would have no *prima facie* force as

proof of intent and cause to believe; since such force is given to such facts, when material, only by G. L. c. 137, § 6, of the gaming statute which does not apply where, as here, actual transactions relieving from liability under § 4 have taken place. *Harris* v. *Friedman*, 245 Mass. 479.

We are unable to agree with the plaintiff's further contention that it was for the jury to determine whether actual sales and purchases were in fact made. She interprets wrongly the cases which have held that evidence of the ability of the broker who carries through the alleged transaction to meet simultaneous demands of all his customers for delivery of the particular stock is essential to proof of actual purchase or sale. *Fiske* v. *Doucette, supra,* nowhere decides that when, as here, actual certificates were received or delivered by the broker in the transaction and payments made therefor, it is necessary to go further and show the state of the broker's relation to all his customers. In the cases in which evidence of the broker s relation to all his customers has been declared a necessary element in the proof of actual sales or purchases, there has been the equivalent of a finding, as a fact, that no actual sale or purchase had taken place; and there has been lacking evidence that as a result of the alleged purchase or sale the broker had in his possession certificates sufficient in number to satisfy simultaneous demands of all his customers for such certificates, which, by demonstrating that actual deliveries must have been made, could control and contradict such finding of fact. See *Greene* v. *Corey, supra; Adams* v. *Dick,* 226 Mass. 46; *Barrell* v. *Paine,* 236 Mass. 157; *S. C.* 242 Mass. 415; *Adams* v. *Hayden, supra; Marshall* v. *James,* 252 Mass. 306; and compare *Houghton* v. *Keveney,* 230 Mass. 49, and *Zembler* v. *Fitzgerald, supra.* See also *Weisberg* v. *Hunt,* 239 Mass. 190, and *Walters* v. *Albee,* 245 Mass. 216.

In *Matthys* v. *Hornblower,* 224 Mass. 248, both proof of deliveries in connection with the immediate transaction and of ability at all times to meet the simultaneous demands of all customers for the stock were present; but there was no intimation that the latter was necessary where the former appeared. The case is covered in principle by *Barrell* v.

*Paine,* 236 Mass. 157, and *Harris* v. *Friedman, supra.* The language of the opinion in *Crehan* v. *Megargel,* 235 Mass. 279, 283, relates to proof of performance of a contract to carry stock, not to proof that an actual sale or purchase has been made.

There is nothing in the contention that because a balance was struck on the purchase price certain of the transactions were not actual. A cancellation of debts both of which are due is the equivalent of payment in cash. *Breck* v. *Barney,* 183 Mass. 133. Nor is it material that certain of the transactions were the only ones in which the broker took part on the day in question. No implication is to be drawn from the last sentence of § 4 that a single transaction carried through by an actual delivery of the stock dealt in and payment therefor is other than an actual purchase or sale.

The plaintiff relied solely on her count under the statute. Consequently, no question now arises upon any claims at common law.

It follows that the judge was right in his rulings.

*Exceptions overruled.*