JAMES C. PAPADOPULOS *vs.* WILLIAM E. BRIGHT & others.

Suffolk.  March 12, 1928.— May 29, 1928.

Present: RUGG, C.J., BRALEY, PIERCE, WAIT, & SANDERSON, JJ.

*Contract,* Construction, Performance and breach, Implied.  *Conflict of Laws.  Stockbroker.  Damages,* Nominal.  *Practice, Civil,* Interrogatories, Ordering verdict, Exceptions.  *Evidence,* Relevancy and materiality.

A contract made in Boston in this Commonwealth, whereby one opened an account with a stockbroker doing business in that city, who was to purchase and sell from time to time such shares of stock as the customer might direct, did not contemplate the purchases and sales of shares on exchanges in any particular State but contemplated deliveries of shares to the customer in Boston if any were required by him, and its construction was governed by the laws of this Commonwealth, although the first and only order placed by the customer with the stockbroker under the contract was executed in the State of New York and therefore was subject in certain respects to the rules and regulations of the New York Stock Exchange.

The provisions of the contract above described gave the stockbroker the right to sell shares bought for the customer's account whenever such a sale was deemed by the stockbroker necessary for his protection; and to lend or pledge any such shares, and make deliveries with them to and for other customers.  The customer made a deposit with the stockbroker and thereupon directed him to purchase certain shares, which were purchased and paid for in full by the stockbroker's correspondent, who received and retained possession of a certificate for the shares.  The stockbroker was at all times thereafter entitled to the immediate delivery of the shares by his correspondent.  About three months later, the customer, in response to the stockbroker's request for additional margin, made him an additional payment of one half the margin requested.  Upon the same day the market declined and the stockbroker ordered the shares sold, notice of which sale was received by the customer two days

later.   In an action for money had and received commenced thereafter by the customer against the stockbroker to recover the two payments made, there was evidence that the defendant, on accepting the additional margin, agreed to notify the plaintiff if more margin were needed. There was no evidence to show the price at which the shares might have been bought after the plaintiff first learned of the sale of the shares. The jury found specially that the defendant made an actual purchase and sale of the shares on the plaintiff's account.   The judge thereupon, with the consent of the defendant, ordered a verdict for the plaintiff for nominal damages.   *Held,* that

(1) The defendant was not bound at all times to have in his possession, or pledged, specific securities of the kind and amount ordered available for delivery to the plaintiff; he bound himself to deliver the number of shares of stock bought on payment and demand by the plaintiff, and he had a right to ask for additional margin for his protection;

(2) Delivery of the shares bought to the defendant's correspondent was delivery to the defendant;

(3) The special finding by the jury was warranted;

(4) No breach of duty on the part of the defendant appeared before the additional margin was paid by the plaintiff; and the plaintiff was not entitled to a return of the money deposited;

(5) If the plaintiff were entitled to recover for any breach of the agreement made at the time he paid the additional margin, he could recover only nominal damages in the absence of evidence of the price at which the shares could have been bought after he first learned of the sale of the shares;

(6) Exceptions by the plaintiff must be overruled.

It was proper, in the action above described, to refuse to require the defendant to answer interrogatories by the plaintiff relating generally to transactions by the defendant and his correspondent in the shares during the period of the plaintiff's transaction with the defendant; on the record such matters were immaterial to any issue in the action.

CONTRACT against a firm of stockbrokers to recover a deposit made with the defendants by the plaintiff, one of their customers.   Writ dated April 12, 1926.

In the Superior Court, the plaintiff filed certain interrogatories to one of the defendants, relating generally to the transactions of the defendants and of their New York correspondents during the period December 2, 1925, to March 6, 1926, in the stock concerned in the transaction between the plaintiff and the defendants.   After the defendant interrogated had declined to answer such interrogatories, the plaintiff filed a motion for further answers, which was denied by *Morton,* J.   The plaintiff alleged exceptions to the order denying his motion.

The action then was tried before *Greenhalge,* J.  Material evidence and a special question answered by the jury are described in the opinion.  A customer's application card signed by the plaintiff on December 2, 1925, when he made his original deposit with the defendants, contained the following provision: "It is further agreed on my part that all securities now or hereafter carried in my account and all securities which I may from time to time deposit with you to protect the same may be used to make deliveries to and for other customers, or may be loaned or may be pledged by you, or your correspondents, either separately or together with other securities, either for the sum due thereon, or for a greater sum, without further notices to me."

It was provided in the receipt given the plaintiff for such deposit that "It is understood and agreed, waiving all notice, that the sale or purchase of this and all other stocks, bonds, securities or contracts in this account, by public or private sale, is authorized, when such sale or purchase is deemed necessary by us for our protection."

Among the rulings requested by the plaintiff and refused by the judge were the following:

"3. While the defendants have authority to substitute other securities of the same kind and amount for the securities which they claim to hold for the plaintiff, they must have in their own possession or pledged with banks specific securities of the kind and amount purchased by the plaintiff available for delivery to him, free from the demands of other customers, upon payment of the balance due by him."

"5. If the defendants did not have in hand or under their immediate control at all times the shares claimed to have been purchased for the plaintiff or an equal amount of other shares of the same stock, available for delivery to the plaintiff free from the demands of other customers, then the plaintiff may recover on the second count of his declaration."

"8. Under the contract between the parties the defendants were bound to carry fifty shares of Independent Oil & Gas for the plaintiff as long as he kept his margins good.

"9. If the defendants were not carrying fifty shares of said stock for the plaintiff from December 4, 1925, to March

3, 1926, they were in default, and the plaintiff has a right to recover the money paid by him to the defendants under the second count of the declaration."

The judge instructed the jury in part as follows: "But under the general contract that is implied by the relation of the parties, in the ordinary course of events, the stockholder [*sic*] may pledge or hypothecate securities which he is bound to purchase, and may use them in that way in the conduct of that business, only he is obliged at all times to have the certificate available. It is enough if he actually purchases or actually sells upon the order of his client."

After the jury's answers to questions submitted to them, the judge, with the consent of the defendants, ordered a verdict for the plaintiff in the sum of $5. The plaintiff alleged exceptions.

*W. R. Bigelow*, for the plaintiff.

*S. E. Gifford*, for the defendants.

SANDERSON, J. The plaintiff seeks to recover on a count for money had and received the amount of two payments made by him to the defendants. On December 2, 1925, he requested the defendants, as brokers, to purchase and sell for his account such stocks as he might order from time to time, and deposited with them $500. On December 4, 1925, he ordered them to purchase fifty shares of the stock of a specified company. The evidence would justify the finding that on the same day, at the defendants' request, these shares were purchased by their New York correspondents, who received delivery of and retained in their possession a certificate for the shares, having made payment therefor in full. The defendants had a margin account with their New York correspondents and were at all times during the period covered by the declaration entitled to the immediate delivery of fifty shares of the company's stock. On March 3, 1926, in response to a request by the defendants for $400 additional margin, the plaintiff paid them $200. He testified that they then agreed to notify him if more margin were needed. The defendants' contention was that no such agreement was made; that this money was received by them upon an agreement that they should enter a stop order to sell the shares if

the market declined below a certain point; that on the same day it did so decline, the shares were sold and the purchaser thereof received delivery of a certificate therefor from the defendants' correspondents. On March 5, notice of the sale reached the plaintiff who went to the defendants' office and demanded repayment of the money deposited.

The jury, by their answer to a question submitted, found that the defendants through their agents made an actual purchase and actual sale of the stock on the plaintiff's account. The defendants assented to the order directing a verdict for the plaintiff for nominal damages. The plaintiff excepted to so much of the order as limited his recovery to nominal damages, and contends that he is entitled to recover both payments made because the defendants did not buy, receive and carry the stock ordered as required by the law of New York.

The conditions of employment, as stated in his request dated December 2, 1925, did not contemplate the purchases and sales of stock in any particular State. His orders might be executed upon any exchange where they could be filled. The fact that the first order placed, and the only one involved in this action, was executed in New York, and was therefore subject in certain respects to the rules and regulations of the New York Stock Exchange, does not mean that the parties intended that the contract between them was to be governed by the laws of that State relating to stocks bought on margin; it contained no provision that it was to be so governed. *Barrell* v. *Paine*, 242 Mass. 415, 425. *Marshall* v. *James*, 252 Mass. 306, 310. The contract was made in Boston, the payments were made there, and, apparently, it contemplated delivery of stock to the plaintiff in that city if deliveries were required by him. The case falls within the general rule that a contract obligation and its interpretation are governed by the law of the place where it is made.

Not only did the defendants make no agreement to hold the stock bought, but the plaintiff expressly agreed before the stock was purchased that they might loan or pledge any stock thereafter carried on the plaintiff's account, and also that the stock might be used to make deliveries to and for other cus-

tomers. With this authorization the plaintiff cannot successfully contend that the defendants were bound at all times to have on hand available for delivery to him, either in their possession or pledged to a bank, specific securities of the kind and amount ordered. If such an obligation ever existed, it arose out of the agreement on March 3, 1926, and no breach of duty before that date could have been found on the evidence. Delivery of the stock to their agents was in legal effect delivery to the defendants. As the finding that the purchase was actually made was justified by the evidence, the plaintiff is not entitled to a return of the money deposited.

Under the law of this Commonwealth, apart from special contract, the legal title to stocks carried on margin for a customer is in the broker; and although the customer has a right to pay for and demand delivery thereof at any time, he does not become a creditor of the broker who has bought the stock for him on margin until after demand and refusal, or the equivalent. *Hall* v. *Paine*, 224 Mass. 62. *Richardson* v. *Shaw*, 209 U. S. 365, 382, 384. Under the original contract the defendants had the right to sell the stock whenever such sale was deemed necessary for their protection. They bound themselves to deliver fifty shares on payment and demand by the plaintiff and they had a right to ask for additional margin when the money deposited did not sufficiently protect the stock.

At all times during the period covered by the declaration this stock was listed and actually traded in on the New York Stock Exchange. No evidence was offered tending to prove the price at which it might have been bought after the plaintiff first learned of the sale. In the absence of such evidence the plaintiff, if entitled to recover, would be limited to nominal damages. *Stewart* v. *Johnson*, 252 Mass. 287, 289. *Hall* v. *Paine, supra*, pages 65, 66.

The order denying the motion that certain interrogatories be answered was right. Because of the facts found by the jury, the state of the accounts of the defendants and of their correspondents with their customers was immaterial to any issue here involved. *Barrell* v. *Paine*, 236 Mass. 157, 163,

164.   *Harris* v. *Friedman*, 245 Mass. 479, 482.   *Ryan* v. *Whitney*, 257 Mass. 218, 224.

For reasons which already sufficiently appear we are of opinion that there was no error in the refusal of the judge to give the rulings requested and none in that part of the charge to which exception was taken.

*Exceptions overruled.*