LUCILLE BROWN *vs.* MUTUAL STOCK COMPANY.

Suffolk.     January 8, 1908. — May 20, 1908.

Present: KNOWLTON, C. J., HAMMOND, LORING, SHELDON, & RUGG, JJ.

*Wagering Contracts. Contract,* Validity. *Statute.*

In an action of contract brought under R. L. c. 99, § 4, to recover money paid as margins upon stock wagering contracts alleged to have been made under the circumstances described in the statute, the defendant filed a declaration in set-off under the same section of the statute, seeking to recover from the plaintiff money paid by the defendant to him in " closing " a certain contract. It appeared that the parties dealt with one another as principals, and not as principal and broker, and that part of the sum which the defendant sought to recover from the plaintiff was the margin which the plaintiff previously had paid to him on the same contract. *Held,* that the repayment by the defendant to the plaintiff of the margin which the plaintiff had deposited with him was not a payment on account of the fictitious contract described in the statute, and could not be recovered by the defendant thereunder.

CONTRACT under R. L. c. 99, § 4. Writ in the Municipal Court of the City of Boston dated September 28, 1905.

On appeal to the Superior Court the case was tried before *DeCourcy,* J. According to her declaration the plaintiff sought to recover $135, alleged to have been paid by her to the defendant under stock wagering contracts, and interest thereon. In a declaration in set-off the defendant sought to recover from the plaintiff $128.12, alleged to have been paid to her by it in closing some contracts of the same character. There were in evidence some releases of the defendant by the plaintiff as to some of the transactions.

It appeared that a part of the sums alleged in the declaration in set-off to have been paid to the plaintiff by the defendant was made up of the margins deposited by the plaintiff with it on the same contracts in " closing " which the alleged payments were made by the defendant.

At the close of the evidence, the plaintiff requested the presiding judge to rule : " If a set-off is proper in this action it can be for profits only paid by the defendant to the plaintiff."

The presiding judge refused so to rule, but instructed the jury in part that, if the plaintiff and defendant dealt as principals,

and not as principal and broker, with reference to the transactions relied upon in set-off, the defendant might recover of the plaintiff Brown the full amount of its declaration in set-off. The jury found for the plaintiff for her payments, before mentioned, remaining unaffected by releases, amounting to $105, and also found for the defendant for the full amount of the declaration in set-off, setting off one verdict against the other, and finding for the defendant in the sum of $25.01, being the excess of the defendant's claim over that of the plaintiff, with interest; and the plaintiff alleged exceptions.

*J. H. Duffy,* for the plaintiff.

*F. H. Noyes,* for the defendant.

RUGG, J.   This is an action of contract to recover, under the provisions of R. L. c. 99, § 4, money paid in the class of gaming contracts therein described.   The only question arises under a declaration in set-off filed by the defendant, containing nine items, for money alleged to have been paid to the plaintiff by it on account of nine different stock transactions.   The transaction was the same in form as to each of the items, varying only as to the description of stock and other matters immaterial to this inquiry.   The defendant gave to the plaintiff, at each time her money was paid to it, a ticket, of which the following is a sample :

"Mutual Stock Company, Brokers, 50 Bromfield Street, Limited to 2%.  Boston, Aug. 24, 1905.  Mrs. Brown has bought of us for her account and margin, 5 shares of U. S. S. Pfd.   Margin $10.00.   Price 105 5/8 to stop at 103 5/8."

This ticket meant that the plaintiff had paid to the defendant $10, and that, at any time after the issuance of the receipt, the defendant was to return to the plaintiff on demand the amount received from her, as shown upon the ticket, plus the amount by which the published market price of the shares mentioned in the ticket exceeded, at the time the demand was made, that published at the time of the issuance of the ticket, such amount being called profits; but the liability of the defendant for such profits was limited to $2 per share.   If the published market price of the shares, at the time of the plaintiff's demand, was less than at the time of the issuance of the ticket, the defendant retained the amount of the decrease.   On the nine

transactions the plaintiff paid to the defendant $100 and received from it this sum and $31.87 in addition as profits, except that in one instance she lost $3.75, which was deducted from the $10 deposited as margin on that particular bet, making a net total of $128.12 paid by the defendant to the plaintiff. It was found by the jury, under instructions not excepted to, that all the facts existed necessary for some recovery under the statute, and that the parties were dealing with each other as principals, and that the defendant was not a broker for the plaintiff. *Anderson* v. *Metropolitan Stock Exchange,* 191 Mass. 117. The refusal of the judge to rule, as requested by the plaintiff, that the set-off could be " for profits only paid by the defendant to the plaintiff " is contended to have been erroneous.

The respective contentions of the parties can be best illustrated by a concrete example. On August 28 the plaintiff paid to the defendant $10 on account of five shares of L. and N. stock. On the same day she received from the defendant $17.50, being a return of the $10 she had paid in and a profit of $7.50. The claim of the defendant is that it is entitled to recover the entire $17.50 ; in other words, that it shall recover back, in addition to its actual loss on the bet, the $10 which the plaintiff paid in, and thus in any event make a profit of $10 on the transaction.

The effect of this contention is that the keeper of the gambling place shall not only recover all he has lost but keep all that the victim has paid in. It is inconceivable that the Legislature could have intended, when enacting legislation admittedly aimed at the suppression of a species of gambling, to give such an inequitable advantage to the fictitious stockbroker over the mock customer. The manifest purpose of the statute was to protect the public against being preyed upon by this species of gaming and this type of gambler. As was said in *Corey* v. *Griffin,* 181 Mass. 229, at 232, " The object [of the statute] is not to punish the winner nor to protect the loser as such," but " to suppress that gambling by putting such restraint upon those who are tempted to indulge in it . . . as can arise from a liability to pay back money received." This object would be frustrated if the statute should be so interpreted that the operator, who requires a sufficiently large " margin " or deposit against loss, would in-

evitably be a winner. This would always protect one side at the expense of the other, no matter what might be the issue of the particular bet. The language of the statute does not require an interpretation which would lead to a result so contrary to the purpose of the Legislature. It provides that " whoever . . . contracts to buy or sell . . . any securities or commodities, intending at the time that there shall be no actual purchase or sale, may sue for and recover . . . from the other party to the contract, . . . any payment made . . . on account thereof . . '." This can only mean, as to any particular transaction, the payment made on account of the bet, and not the return of the so called margin put up by the alleged customer.

To recur to the illustration already given, the statute permits the recovery only of the $7.50 loss which the defendant suffered. Stripping the dealings between the plaintiff and the defendant of their stockbroking phraseology, the essence was this : The plaintiff bet that a certain stock would go up in its published price, and the defendant bet that it would go down, each limiting their liability to $2 per share on the number of shares agreed upon as the subject of the wager, except that in one instance the plaintiff's limit was $4 per share. The defendant demanded and got from the plaintiff complete security in the form of a cash deposit that she would pay her bet in full in case she lost, while the plaintiff took no security in any form that the defendant, if a loser, would pay. The plaintiff trusted, the defendant was sure. But the deposit formed no part of the bet. It was mere security and did not become a payment on account of the fictitious contract at all when repaid by the defendant together with its losings to the plaintiff. This was the theory upon which *Anderson* v. *Metropolitan Stock Exchange, ubi supra,* was tried and decided. It follows that it was error to refuse to grant the prayer of the plaintiff.

*Exceptions sustained.*