MELVIN A. FISKE *vs.* JOSEPH E. DOUCETTE.

Suffolk.   March 11, 1910. — June 25, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Wagering Contracts. Contract. Stock Exchange. Clearing House. Stockbroker. Words, "Actual purchase or sale."*

Although the method of settling balances on a stock exchange through the medium of a clearing house is recognized as a commercial custom and convenience, in a suit in equity to compel redelivery to the plaintiff of bonds on the ground that he had delivered them to the defendant on account of marginal transactions in securities or commodities of the nature described in R. L. c. 99, §§ 4-7, in which the plaintiff intended that there should be no actual purchase or sale and the defendant had reasonable cause to believe that such intention existed, the defend-

ant cannot make out the defense under § 4, that he had made an actual purchase or sale, merely by showing purchases and sales upon a stock exchange and settlements by adjustments of balances through the clearing house, but he must go further and prove in addition that as a result of the transactions he or his agents, in cases of purchases, had within his or their immediate control and ready at all times to deliver to the plaintiff if called for by him certificates of the particular stocks dealt in equal to those purchased, and, in cases of sales, similar certificates ready for delivery to the purchasers.

The provision of R. L. c. 99, § 4, with regard to an action to recover payments alleged to have been made by the plaintiff to the defendant on account of marginal transactions in securities or commodities in which the plaintiff intended that there should be no actual purchase or sale and the defendant had reasonable cause to believe that such intention existed, that the defendant should not be liable if he " makes, in accordance with the terms of the contract or employment, personally or by agent, an actual purchase or sale of said securities or commodities, or a valid contract therefor," protects from the remedy of the statute only purchases and sales honestly made in pursuance of a true intent to consummate a veritable change of title to definite property, the words, "actual purchase or sale," meaning a real and tangible transfer of a full and complete title to an existing, defined and certain security or commodity.

BILL IN EQUITY, filed in the Superior Court on February 20, 1906, and afterwards amended, in which the plaintiff averred that he employed the defendant to buy and sell upon margin for his account various securities, intending that there should be no actual purchase or sale thereof, and delivered to the defendant on account thereof three bonds of the Cincinnati, Richmond and Muncie Railroad, that the defendant had reasonable cause to believe that the plaintiff's intention existed, that the defendant still had the bonds, and that the plaintiff knew of no other property of his that could be attached or taken on execution in an action at law. The prayers of the bill were (1) that the defendant be adjudged and decreed to be indebted to the plaintiff for the value of the bonds, (2) that the defendant temporarily be enjoined from disposing of or incumbering his interest in the bonds, and (3) that the defendant be ordered to transfer the bonds to the plaintiff or to pay to him their value.

The suit was referred to Alonzo R. Weed, Esquire, as master. The substance of his report is stated in the opinion. The defendant filed exceptions to the report in substance as follows:

1. Because the master ruled that the plaintiff could recover the value of the bonds.

2. Because the master ruled that the plaintiff was entitled to recover upon the facts stated and the evidence reported.

3. Because the master ruled that the plaintiff, upon the facts stated and the evidence reported, had established an intention on the part of the plaintiff at the time of the transactions in question that there should be no actual purchase or sale and that the defendant had reasonable cause to believe that the said intention existed.

4. Because the master ruled that the defendant, relying upon the actual purchases and sales of securities executed for the plaintiff's account in the manner described in the report, must go further than to show that the securities alleged to have been purchased for the plaintiff's account were bargained for on the floor of the stock exchange and cleared and settled for in the clearing house of the stock exchange; that the defendant must go further than to show that by reason of the transactions conducted by him or his agents for the plaintiff's account the defendant acquired contractual rights merely to the delivery upon demand of the securities alleged to have been purchased for the plaintiff's account; that to make out a *prima facie* defense the defendant must also prove that by reason of the purchases made by him or his agents upon the stock exchange for the plaintiff's account, he or his agents had within his or their immediate control certificates issued to him or his agents or assigned to him or them specially or in blank either of the particular stocks purchased for the plaintiff's account or of an equal amount of the same kind of stock, at all times ready to deliver to the plaintiff if called for by him, or to a purchaser when sold for the plaintiff's account, and that in the absence of such evidence the defendant has not sustained the burden of proving the defense relied upon.

5. Because the master, having found as a fact that all of the stocks bought by the defendant or his agents on account of the plaintiff were actually bought through the Boston stock exchange, the New York stock exchange or the New York consolidated stock exchange and cleared and settled for in the clearing house of the said stock exchanges, further ruled that such transactions were not actual purchases and sales within the meaning of R. L. c. 99, §§ 4–7.

6. Because the master refused to rule as requested by the defendant that the transaction by which a member of the

Boston or New York stock exchange who buys upon the floor of the exchange for or on account of a customer of the broker and settles his day's purchases and sales through the clearing house actually receiving certificates for the balance of the day's purchases and sales, is an actual purchase and sale within the meaning of R. L. c. 99.

The exceptions were heard by *Wait,* J., who filed the following memorandum:

" The defendant's exceptions 1, 2 and 3 are overruled. While I have great difficulty in reaching the conclusion that the plaintiff had an affirmative intention that actual sales and purchases should not be made, upon the report and evidence stated, I do not think I ought to override the finding of the master who saw the witnesses and heard all the evidence. There seems abundant ground for sustaining the finding that the defendant had reasonable cause to believe such affirmative intention existed.

" Exceptions 4, 5 and 6 are sustained. In the absence of evidence that a seller upon the stock exchanges referred to is not, at the time of making the contract, the owner or assignee of the securities or commodities dealt in or authorized by the owner or assignee or his agent to sell or transfer them; or that the purchaser intends not to complete the transaction by a manual transfer thereof; or that the brokers intend there shall be no such manual transfer; — evidence of a bargain and sale on said exchanges to be completed through their several clearing houses is sufficient proof of ' an actual purchase or sale of said securities or commodities, or a valid contract therefor' to satisfy R. L. c. 99, § 4. ' Clearing,' as described in the master's report, is in substance a manual transfer of the securities or commodities embraced therein.

" The report is recommitted to the master for further findings in conformity hereto."

The report subsequently was twice recommitted to the master, who filed supplementary reports to which the defendant filed exceptions. The suit finally was heard by *Wait,* J., and a decree was entered dismissing the bill. The plaintiff appealed.

*W. R. Bigelow,* for the plaintiff.

*H. W. Ogden,* for the defendant.

RUGG, J.    This is a suit in equity to recover securities (or the value of them) alleged to have been deposited with the defendant, a stockbroker, for the purpose of carrying on that species of gambling referred to in R. L. c. 99, § 4.   The cause was sent to a master, who found that the plaintiff at the solicitation of one Smith, an employee of the defendant, deposited the bonds in question with the defendant as security for stock transactions; that Smith ordered purchases and sales of stocks without personal directions from the plaintiff, only occasionally reporting to him what was being done; that shares of stocks aggregating large amounts in value were bought or sold from time to time, monthly statements of which were sent to the plaintiff.

The first question raised is whether there was evidence sufficient to warrant a finding that the plaintiff intended that there should be " no actual purchases or sales " of stocks, and that the defendant " had reasonable cause to believe that said intention existed " in the sense in which these words are used in R. L. c. 99, § 4.   The master found that the plaintiff had an affirmative intention that actual purchases and sales should not be made, and a judge of the Superior Court refused to override this finding.   A reading of the evidence reported touching this matter convinces us that this conclusion of the master was amply warranted.   All the circumstances of the transactions go far toward establishing such intention.   The testimony of the plaintiff tends in the same direction.   The master saw the witnesses and heard their oral testimony, and there is no foundation for argument that his decision is plainly wrong.   Therefore it must stand.   For the same reasons the finding that the defendant had reasonable cause to believe that such intent existed cannot be reversed.   *Holt* v. *Silver*, 169 Mass. 435.   *Joslin* v. *Goddard*, 187 Mass. 165, 167.   The first three exceptions taken by the defendant to the master's report were overruled rightly.

It becomes necessary to determine whether upon all the evidence the defendant ought to prevail on the ground that he made " an actual purchase or sale of said securities " in accordance with R. L. c. 99, § 4.   This was an affirmative defense set up by the defendant in his answer, and the burden of proving it rests upon him.   *Lonergan* v. *Peck*, 136 Mass. 361, 364.   *Sayles* v. *Quinn*, 196 Mass. 492.   *Wylie* v. *Marinofsky*, 201 Mass. 583,

584. This is in accordance with the ruling of the master, to which no exception was taken. The law of New York was found to be that one who relies upon an affirmative defense is bound to prove it. Whether valid contracts for such securities were made is not raised by the defendant's exception. The defense was not and could not well have been based upon this ground, the claim being that according to the practice of the stock exchanges actual sales and purchases were shown. There was nothing in the case to indicate contracts for future deliveries. The dealings were all on the footing of present deliveries. The clearing houses of the several stock exchanges were used, and purported to be used, not to set off and cancel contracts to be performed in the future between parties who did not have the stocks called for by contracts, but to effect deliveries under existing contracts between parties who had the stocks in hand. Transactions occurred upon stock exchanges in Boston and New York. The purchases and sales made upon the Boston stock exchange, during the period when the defendant was a member of it in good and regular standing, were conducted by the use of the clearing house maintained for the convenience of its members, according to which adjustments were made on the basis of the trading of each day, and the balances only of the securities and payments were passed, and none of the stocks bought or sold by the defendant for the plaintiff's account were actually received from the selling or delivered to the buying broker. The fact that there was no evidence that in any instance the stock bought or sold by the defendant for the plaintiff's account was the only order executed by the defendant in the particular stock on the same day is immaterial in view of the ground upon which this decision rests. As to some of the stocks, it appeared that the defendant was in possession of or had control of certificates therefor. As to others it appeared that purchases were offset by sales made for other customers, and there was no evidence that in these instances the defendant had, or had received from such selling customers control of certificates for the stocks purchased. Stocks purchased for the plaintiff were not always carried until sold for his account, but were sold earlier in several instances for the account of other customers. In these instances there was no evidence that at the time the sales purported to have been made for the plaintiff's account the defendant

had control of any certificates.  The defendant was for a time under suspension as a member of the Boston stock exchange.  A substantial part of the transactions which formed the subject of account between the plaintiff and the defendant related to stocks traded in on New York stock exchanges.  As to the trading done in Boston, while he was under suspension from the Boston exchange, and in New York, the defendant dealt with other brokers as their customer giving orders in his own name as to buying and selling upon margin, furnishing the necessary security himself, and not disclosing to them the plaintiff's name.  With these brokers the defendant had running accounts which were balanced monthly.  He did not actually receive or deliver any certificates for the shares bought or sold at his order, but debited and credited the plaintiff on the account with him.  The New York transactions were executed on the New York stock exchange or on the New York consolidated stock exchange, both of which maintained clearing houses through which settlements were made on daily balances of the total of purchases and sales by each member.  There was no evidence that the brokers employed by the defendant had at any time during the transactions in issue in their possession or control certificates for any of the stocks claimed to have been bought for the plaintiff's account. The master found that it was the law of New York that the broker is the pledgee of stocks, bought by him for a customer upon margins, to secure the repayment of all advances made by him thereon and is bound at all times until the stocks are sold upon the order of the customer to have in his name and under his control ready for delivering to the customer the stock purchased or an equal amount of other shares of the same stock, and that, if a broker for his own benefit mingles or pledges such stocks so as to be unable to make such delivery to the customers upon demand, he is guilty of conversion.  In this regard the law of New York probably differs from our own.  *Chase* v. *Boston,* 180 Mass. 459; 193 Mass. 522.  *Richardson* v. *Shaw,* 209 U. S. 365. *Furber* v. *Dane,* 203 Mass. 108, 116.

The result of these findings is that there were numerous transactions in Massachusetts in which the defendant had no certificates of stock in his possession or control to correspond with or meet the alleged purchases or sales on account of the plaintiff,

and that as to transactions on the New York exchanges the defendant at no time had such certificates, and there was no evidence that the New York brokers at any time had. them, and there was no evidence to show whether any seller of any securities bought for the plaintiff's account was the owner or assignee of such securities or authorized by an owner or assignee to sell them. The question narrowly stated is whether a defendant in a case like this makes out a defense by showing purchases and sales of stock on the stock exchange, and settlement by the adjustment of balances through the clearing house without showing more, or whether he must go further and prove in addition that as a result of the purchases he or his agents had within his or their immediate control certificates of the particular stock to an amount equal to that purchased at all times ready to deliver to the plaintiff if called for by him, or, in case of sales, similar certificates ready to deliver to the purchasers.

The method of settling balances on the stock exchange through the medium of a clearing house is recognized as a commercial custom and convenience. *Breck* v. *Barney*, 183 Mass. 133. *Dillaway* v. *Alden*, 88 Maine, 230. But that is not decisive of the question now presented. The defendant undertakes to show an " actual purchase or sale " of definite " securities " in order to make out his defense under the statute. In determining precisely the sense in which these words were used by the Legislature, it is important to bear in mind that the statute " is intended to suppress a well-known species of gambling. . . . It is intended to suppress that gambling by putting such restraint upon those who are tempted to indulge in it, or to assist others in indulging in it, as can arise from a liability to pay back money received in the business." *Corey* v. *Griffin*, 181 Mass. 229, 232. *Wilson* v. *Head*, 184 Mass. 515, 518. *Brown* v. *Mutual Stock Co.* 198 Mass. 524. The meaning of the words " actual purchase or sale " is made somewhat more plain by the language of R. L. c. 99, § 6, to the effect that in actions like the present " settlements . . . without the completion of the purchase or sale of the securities " shall be *prima facie* evidence of an " intention that there should be no actual purchase or sale." While "purchase or sale " standing alone and construed with technical strictness may mean in many connections a completed and consummated transfer of title,

yet in the dialect of stock transactions they have come to have a significance somewhat remote from this and to include conditional, wagering, short, wash or other kinds of uncompleted, insubstantial or fictitious sales and purchases. The Legislature in undertaking to give a new remedy for losses occurring in the species of game of chance carried on in connection with the stock market, which should be at all effective to suppress the gambling, intended to brush away this confusion of nomenclature and to describe a substantial, genuine and visible sale or purchase as distinguished from those which are pretended, feigned or unfinished. The statute protects from the remedy provided for the loser only purchases and sales honestly made in pursuance of a true intent to consummate a veritable change of title to definite property. Actual purchase or sale means in this connection a real and tangible transfer of a full and complete title to an existing, defined and certain security or commodity. See *Newton, petitioner,* 172 Mass. 5; *Kramer* v. *Wilson,* 49 Ore. 333, 338; *State* v. *Wells,* 31 Conn. 210; *Osborne* v. *San Diego Land & Town Co.* 178 U. S. 22, 38; cases collected in 1 Encyc. L. & P. 1117. This is the plain implication of what is said in *Rice* v. *Winslow,* 180 Mass. 500. The dispute there arose between the purchaser and the stockbroker, and it was assumed as the basis of the opinion that the broker had in his manual possession or immediate and instant control certificates of stock to meet upon demand every share purchased or sold for the account of his customer. See also *Chase* v. *Boston,* 180 Mass. 458, 460. St. 1890, c. 437, expounded in *Rice* v. *Winslow,* 180 Mass. 500, was not changed in this regard by St. 1901, c. 459. R. L. c. 99, §§ 2-4. *Wilson* v. *Head,* 184 Mass. 515, 517. *Allwright* v. *Skillings,* 188 Mass. 538. *Beers* v. *Wardwell,* 198 Mass. 236. The defense of an actual purchase, as shown in *Rice* v. *Winslow,* is made out, if the broker proves that he bought and had delivered to himself, or to his agent if he acts through an agent, a certificate of stock to correspond with the purchase, and it does not affect the substantial character of the transaction if he carries the stock on a margin for his customer. But the purpose of the statute in requiring of the broker an actual purchase for a customer is not satisfied when the result of the transaction is to leave in the broker's possession or immediate

control no shares to deliver to the customer upon demand. The defendant contends that he has proved an actual purchase if he has bargained upon the stock exchange for the stock and has made a settlement of his total purchases and sales through the stock exchange clearing house. In its practical application this would allow a defendant to prove an actual purchase even though he may never have had a certificate of stock in his possession or control. The illustrations put by the plaintiff in his argument are pertinent. A broker might buy on a certain day for each of five different customers one hundred shares of a given stock and on the same day sell one hundred shares of the same stock for each of five other customers. The result in the clearing house of the stock exchange would be that the aggregate sales would offset the total purchases, and the broker would receive nothing from the stock exchange. But all or a part of these might be fictitious transactions. Unless in fact the broker had in his control five hundred shares of stock to deliver to his purchasing customers, it cannot be said that he had made an actual purchase for them. This or something having a like result happened on several occasions, as shown by the master's report, when the defendant had in his control no stock to deliver to the plaintiff if he had made a demand. Moreover, it has been decided that even under the mask of strict compliance with the rules of a stock exchange there may be clear wagering contracts. *Harvey* v. *Merrill*, 150 Mass. 1. *Higgins* v. *McCrea*, 116 U. S. 671. The character of a transaction is determined by its substance and not by its form. The defense permissible under the statute is not made out unless by reason of the purchase on the stock exchange the broker or his agent has within his immediate control certificates of stock at all times ready to deliver to the plaintiff upon demand, or in case of sales like certificates for delivery to a purchaser. The actuality of the purchase or sale, even when carried on through the clearing of the stock exchange, depends upon whether the broker really had in his control the securities called for by the transactions when he set off the deliveries to be made by him as broker for a selling customer against deliveries to be made to himself as broker for a purchasing customer. This has nothing to do with compliance with the custom of the stock exchange, but depends upon facts quite outside.

The sales and purchases of stock upon the New York stock exchanges stand upon no different footing in this respect from those in Massachusetts. There was nothing in the evidence to show real transactions beyond the mere bookkeeping of the stock exchange, but all this was consistent with fictitious sales and purchases.

Reliance is placed by the defendant on *Bearse* v. *McLean*, 199 Mass. 242. The question presented in that case was whether a general finding of fact by the Superior Court that there had been actual purchases or sales within the meaning of the statute should be reversed as unwarranted by evidence. That decision only went to the extent of holding that the evidence in support of the finding of fact was not quite so attenuated as to justify an appellate court in pronouncing it plainly wrong in view of the strong presumptions which always exist in favor of such findings. Requests in that case which might have raised points somewhat analogous to those here presented related to the statute of frauds or became immaterial in view of the findings of fact. The case is far from being an authority in support of the defendant's contention.

Although there was evidence that in a number of transactions the defendant did have in his control certificates for the stock purchased for the plaintiff's account, yet as to many there either was no such evidence or there was definite evidence that he did not have them. The whole series of dealings based upon the bonds deposited with the defendant was thus tainted with illegality and the plaintiff is entitled to recover. *Way* v. *Greer*, 196 Mass. 237, 245. *Kennedy* v. *Welch*, 196 Mass. 592, 595. *Embrey* v. *Jemison*, 131 U. S. 336.

It follows that the decree overruling the defendant's exceptions numbered one, two and three, and sustaining his exceptions numbered four, five and six must be reversed and that a decree must be entered overruling all the exceptions, that the decree overruling the exceptions to the master's supplemental report should be affirmed, that the decree dismissing the bill should be reversed, and that a decree should be entered in favor of the plaintiff for $2,850 with interest from the bringing of this suit and for costs.

*So ordered.*