SAMUEL WEISBERG *vs.* WILLIAM HUNT & others.

Suffolk. March 16, 1921. — June 3, 1921.

Present: RUGG, C. J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Practice, Civil,* Auditor's report. *Contract,* Performance and breach. *Stockbroker. Stock Exchange Clearing House.*

Findings of fact by an auditor, to whom was referred an action at law, do not prevent a judge, hearing the action without a jury upon the auditor's report and other evidence not affecting the report, from reaching a different conclusion justified or required by other facts found by the auditor.

A specific provision in a receipt given by a stockbroker to a customer for money paid

as a margin, that it was agreed that "all orders given . . . are to be executed according to the rules of the Consolidated or New York Stock Exchange, and all stocks bought or sold may be received or delivered through the Clearing House, according to the rules of the Exchange, and such a delivery shall be a good delivery," is not limited nor overthrown by a preceding provision therein that "Whatever orders for the purchase or sale of securities or commodities may be given are given and received with the understanding that the parties in all cases intend to complete their transactions by the actual receipt and delivery of the certificates or articles dealt in;" and, under the agreement thus made, (aside from the obligations created by G. L. c. 137, §§ 4–7) the stockbroker was not obliged to make actual purchases and sales of stocks ordered by the customer to be bought and sold for him nor to carry subject to the customer's order stocks which the customer ordered him to buy on his account.

CONTRACT, with a declaration in two counts, the first count being under R. L. c. 99, §§ 4–7 (see now G. L. c. 137, §§ 4–7), and the second count being for $5,200 upon an account annexed containing eighteen items of payments made by the plaintiff to the defendants, stockbrokers, as margin for the purchase and sale of various stocks. Writ dated November 14, 1919.

The action was referred to an auditor. He found that receipts, given by the defendants to the plaintiff upon the payment of margins, were in the following form: "Received . . . dollars, the same to be held as margin or partial payment upon securities or commodities bought or sold, or to be bought or sold, and by the giving and acceptance of this receipt it is agreed that we have the right to hold said sum as security for, or apply the same in part payment of any and all transactions between us; and in case any special directions concerning the application of said sum shall have been given heretofore, the same is hereby waived. Whatever orders for the purchase or sale of securities or commodities may be given are given and received with the understanding that the parties in all cases intend to complete their transactions by the actual receipt and delivery of the certificates or articles dealt in. Where securities sold have not been delivered to us, or securities purchased have not been fully paid for, we reserve the right to purchase or sell the same in the market, should such action become necessary for our protection, owing to the approximate exhaustion of the credit balance which we hold as security. It is agreed that all orders given on your account are to be executed according to the rules of the Consolidated or New York Stock Exchange, and all stocks bought or sold may be received or delivered through the

Clearing House, according to the rules of the Exchange, and such a delivery shall be a good delivery."

Both before the auditor and later before the court the plaintiff relied only on the second count in the declaration. In his brief before this court, the plaintiff stated: "The plaintiff tried this case upon the claim that both parties intended that actual purchases and sales should be made for the plaintiff by the defendants, that the defendants were to carry for the plaintiff the stocks ordered bought and sold, but that the defendants failed to do so." On this issue, the auditor found as follows:

"At the end of each month the defendants furnished the plaintiff with an account of all transactions had for his account, showing on the debit side the prices of all stocks purchased for him plus the commissions, interest charged on the balances due over the margins, and cash withdrawals. On the credit side was shown deposits of margins, proceeds of sales less commissions, interest on margins, balances, and dividends accrued on stocks carried. The accounts also showed in detail the stocks being carried at the end of the month. The plaintiff never objected to any of these accounts.

"There was no evidence as to whether the defendants had at all times or at any time in their possession or control certificates for the particular stocks carried for the plaintiff in the manner described, sufficient in number so that they could have delivered them to him had he tendered the balance of their purchase price and requested delivery.

"No certificates for the securities bought or sold for the plaintiff's account were ever requested by the plaintiff to be delivered to him and no deliveries of securities were ever made to the plaintiff covering the transactions shown by his accounts. The plaintiff never intended to demand delivery of any certificates to him.

"There was no evidence before me as to what the law of New York is in regard to the rights of parties in a situation disclosed by the facts as I have found them here, and for the purposes of this case I presume the law of New York to be the same as the law of Massachusetts.

"I find that the parties intended that in their dealings there should be an actual receipt and delivery of certificates for the stocks

ordered to be bought and sold by the defendants from and to those with whom they dealt upon the stock exchanges.

"I find that the burden of proof upon the defendants to show that actual receipt and deliveries of certificates for stocks ordered to be bought and sold by the plaintiff were in fact made from and to those with whom they dealt upon the stock exchanges has not been sustained, but rather that it appears that deliveries only were made of balances in accordance with the orders of the clearing house. . . .

"I therefore conclude that the plaintiff is entitled to recover the difference between the debit and credit side of" an account which showed the payments of cash made by the plaintiff to the defendants and by the defendants to the plaintiff, "namely, $2,647.99," with interest from the date of the writ.

Other material findings of the auditor are described in the opinion.

After the filing of the auditor's report, the action was heard by *Fox*, J., without a jury. The plaintiff introduced in evidence the report of the auditor and rested. The defendants then called the plaintiff as a witness. His testimony is described in the opinion. The defendants also introduced in evidence certain decisions of courts of the State of New York. At the close of the evidence, the plaintiff moved for a finding in his favor. The motion was denied. The plaintiff then asked for the rulings of law which are described in the opinion. The rulings were refused and the judge found for the defendants, and reported the case to this court for determination.

*W. R. Bigelow*, for the plaintiff.

*P. H. Kelley*, for the defendants.

JENNEY, J. This is an action of contract in which the plaintiff seeks to recover money paid by him to the defendants as margins for the purchase and sale of stocks. The declaration is in two counts, one under R. L. c. 99, §§ 4–7 (now G. L. c. 137, §§ 4–7); and the other on an account annexed for the amounts so paid. The case was tried in the Superior Court without a jury. The plaintiff put in evidence the report of an auditor before whom the case had been heard, then rested, and elected to stand upon the second count. He does not claim that he is entitled to recover under the cited statutes, but relies wholly on alleged failures of

the defendants to perform their contracts with him. In his brief it is stated that ". . . the plaintiff does not claim any illegality in any contract in this case."

The defendants reside in Massachusetts and are and have been partners carrying on business as brokers and having an office in Boston. They are members of the Consolidated Stock Exchange of New York. On October 16, 1918, the plaintiff began operations in the stock market through them, and on that day signed and delivered to them at their request a printed document entitled "Customer's Registration Card." This directed that all orders for the purchase or sale of securities given by the plaintiff should be executed by the defendants at their discretion on or through any stock exchange or curb exchange in Boston or New York. It also provided: "All orders executed in New York or any New York Stock Exchange or Curb Exchange, shall be executed in accordance with the Laws of New York and the Rules and Regulations of the said Exchanges prohibiting fictitious and illegal transactions, contracts and agreements; and [further that] it is understood and agreed that the validity of all transactions . . . executed on any New York Stock Exchange or New York Curb Exchange shall be controlled and determined solely by the Laws of New York." Furthermore, said card authorized the defendants to "loan, hypothecate or otherwise use" all securities held or carried by them on account of the plaintiff and empowered them without demand or notice to "close out at public or private sale" any securities held or carried for the plaintiff whenever they deemed it necessary for their protection.

At the time he signed the card, the plaintiff gave the defendants $400 as a margin for which amount a receipt was given by them, which recited that it was agreed that "all orders given . . . are to be executed according to the rules of the Consolidated or New York Stock Exchange, and all stocks bought or sold may be received or delivered through the Clearing House, according to the rules of the Exchange, and such a delivery shall be a good delivery." Thereafter the plaintiff ordered the defendants to buy and sell stock certificates for him at various times. These orders were in writing and all authorized their fulfilment in accordance with and subject to the laws of the State where they were executed and the rules and regulations of the stock exchanges where the

purchases were made, prohibiting all fictitious and illegal trans-
actions and agreements, and further empowered the defendants
without demand or notice to close out any of the securities carried
by them in the manner stated in the registration card and herein-
before recited.

On February 11, 1919, the plaintiff received a balance then
standing to his credit on the books of the defendants and delivered
to them a release of all claims and demands which he then had
against them. Neither party now claims that the financial trans-
actions entered into prior to that date are still open.

On April 10, 1919, the plaintiff " again began operations in the
stock market," making a new deposit and receiving a receipt like
those previously given him. He was not asked to sign a new regis-
tration card. Thereafter followed transactions relating to the
purchase and sale of stock certificates upon the plaintiff's account
and order, the last of which was on November 13, 1919. For the
payments made by the plaintiff from time to time he received
receipts in form like those hereinbefore referred to. His orders
were in writing and were in form like those previously considered.
During this time the plaintiff paid to the defendants in all $4,400
and received from them $1,752.01.

As the findings of the auditor as to what took place upon
the plaintiff's orders cannot be substantially abridged, reference
must be made thereto. The result of the transactions, however,
was this: The defendants, at the opening of the next business day
for each transaction in behalf of the plaintiff, sent to the clearing
house of the New York Consolidated Stock Exchange, where many
of the transactions took place, a full record of all their transac-
tions for the previous day, which record is known as the clearing
house sheet, and which is required by the rules of said exchange.
Under and in accordance with said rules, transactions are cleared
in the following manner: All clearing house sheets each day sub-
mitted are checked up; a record is then made by the clearing house
showing the excess of purchases over sales, or sales over purchases,
of a given security, as made by each member of the exchange for
the previous day; on a given hour of that day the clearing house
sends to each member whose sales exceed his purchases of a given
security an order to deliver the balance of said securities to some
other member of the exchange, and gives to each member whose

purchases of a given security exceed his sales the name of a member of the exchange from whom he is to receive the shares to which he is entitled. The rules of the exchange require that all securities shall be delivered in accordance with such order on or before a given hour on the same day and provide for the prices at which deliveries shall be made. An adjustment of the difference between the actual price at which a security was bought or sold and the settling price is thereafter made through the clearing house, thus making the transactions, so far as prices are concerned, in accord with the actual amount bid at the time when the purchase or sale was made. "All orders given by the plaintiff to the defendants were executed and completed by the defendants' receipt or delivery of securities in the manner above described, in accordance with the rules of the exchange. Orders for the purchase and sale of stocks listed on the New York Stock Exchange were executed by the defendants through members of . . . [that] Exchange in substantially the same manner as described above." The record does not show what stocks were bought or sold in this manner on each exchange.

No evidence was introduced before the auditor or before the court as to the law of New York with reference to transactions concerning the purchase and sale of stock, and it must be assumed to be the same as the common law of Massachusetts. *Bearse* v. *McLean,* 199 Mass. 242.

On November 13, 1919, before the opening of the stock market on that day, the defendants called the plaintiff's attention to the condition of his account and to the "dangerous state" of the stock market and asked for a further margin. The plaintiff did not furnish this, but gave the defendants a "stop loss" order as to some stock which the defendants claim was then being carried on his account. The auditor finds that such order authorized the sale of the stock on the market when the price fixed was reached in the exchange; and trading at said point having been reached, the stock was sold in accordance therewith. On the same day the plaintiff sold another stock short, but on account of a "reaction upward" was obliged to cover a still greater loss on his account and he then sold the remaining stock held for his account at a further loss. At his request the defendants balanced his account and offered to pay him the balances shown thereby, but he then

refused to take it because the defendants demanded a release of all claims.

The defendants' evidence was an amplification of the auditor's finding that the defendants had furnished the plaintiff with monthly accounts of all transactions showing on the debit side the prices of all stocks purchased for him plus commissions, interest charged on balances due over margins and cash withdrawals. On the credit side these accounts showed deposits of margins, proceeds of sales, loss of commissions and interest on margins, balances and dividends accrued on stocks carried. The accounts also showed in detail the stocks carried at the end of each month. The plaintiff never objected to any of these accounts.

The auditor found that the burden of proof, assumed by him to exist and to be upon the defendants to show actual receipts and deliveries of certificates of stock, had not been sustained, "but rather that it appears that deliveries only were made of balances in accordance with the orders of the clearing house." He closes his report as follows: "I therefore conclude that the plaintiff is entitled to recover the difference between the debit and credit side of the account . . . namely, $2,647.99, with interest from November 14, 1919, the date of the writ."

There was a finding for the defendants; and the case is before us on the plaintiff's exceptions embodied in a report made by the trial judge. The exceptions for the most part relate to the plaintiff's contention that as matter of law the defendants were obliged to make actual purchases and sales of stocks dealt in and that they neither did this, nor carried the stocks until they were ordered to sell the same. The plaintiff largely relies on the finding of the auditor that "the parties intended that in their dealings there should be an actual receipt and delivery of certificates for the stocks ordered to be bought and sold by the defendants from and to those with whom they dealt upon the stock exchanges." This finding, if uncontrolled, established that the dealings were not unlawful and hence the plaintiff could not recover under R. L. c. 99, § 4; but that is not important, as the plaintiff does not rely upon the statute and disclaims any relief founded thereon. If it be given a broader effect and be considered as a finding purporting to control the terms of the receipts and orders quoted in full in the report, the judge was not bound to follow it if the facts

stated required or authorized a different conclusion. *Barrell* v. *Paine*, 236 Mass. 157, 162. *Wheeler* v. *Tarullo*, 237 Mass. 306, and cases there collected.

The same reasoning applies to the effect of the general finding for the plaintiff by the auditor which is phrased, "I therefore conclude that the plaintiff is entitled to recover." This result is based upon the full findings of fact made by the auditor and is a conclusion therefrom. It does not forbid a different result on the part of the judge, if such is justified or required by the facts found.

If the "Customer's Registration Card" be disregarded, as the plaintiff contends it ought, it appears that the receipts given the plaintiff for payments made to the defendants provided that all orders should be executed according to the rules of the stock exchanges· hereinbefore referred to and all stocks bought and sold should be received and delivered through the clearing houses in accordance with the rules of said exchanges and that such a delivery should be a good delivery. This specific provision is not limited or overthrown by the general statement in the receipts that the parties in all cases intend to complete their transactions by actual receipt and delivery of the certificates of the stocks, which requirement, strictly speaking, is limited to the completion of the transactions as between the plaintiff and the defendants. It cannot be construed as rendering meaningless the provisions as to dealings in the stock exchanges. The orders for purchase and sale also required their execution in accordance with the "laws of the State and the rules and regulations of the exchange where the purchase is made, prohibiting all fictitious and illegal transactions and agreements." Such a contract, construed apart from the "stock gambling act" is not illegal. That statute is not involved in this case. It was decided in *Fiske* v. *Doucette*, 206 Mass. 275 (a suit under the statute just referred to), that purchases and sales of stock therein described and made through a clearing house by the balancing of transactions made in a stock exchange did not constitute "actual" purchases and sales of the securities. To the like effect are *Greene* v. *Corey*, 210 Mass. 536, and *Adams* v. *Dick*, 226 Mass. 46, 53. But where the statute above referred to is not involved, a valid contract may be made with reference and subject to the rules of a stock exchange. *Hall* v. *Paine*, 224 Mass.

62, 73, 74, 76. *Bibb* v. *Allen,* 149 U. S. 481. *Clews* v. *Jamieson,*
182 U. S. 461. *Bond* v. *Hume,* 243 U. S. 15. *Dillaway* v. *Alden,*
88 Maine, 230. See also *Fiske* v. *Doucette, supra,* at page 282.
Even under the statute, transactions on a stock exchange, effectu-
ated by the receipt or delivery of the balances of purchase or sale,
are now to a large extent permissible. St. 1919, c. 247. G. L.
c. 137, § 4. The force of this statute upon the present case is not
considered. See, however, *Wilson* v. *Head,* 184 Mass. 515; *Loughlin*
v. *Parkinson,* 184 Mass. 565; *Anderson* v. *Metropolitan Stock
Exchange,* 191 Mass. 117; and *Chandler* v. *Prince,* 221 Mass. 495,
497, note. While it is clear that there "may be wagering even
though the rules of the stock exchange are strictly observed"
(*Adams* v. *Dick,* 226 Mass. 46, 52) no such claim is here made.
The plaintiff's cause of action is wholly founded on the claim
that the defendants failed to perform legal contracts.

As the auditor found that the transactions were all completed
in accordance with the rules and regulations of the exchanges upon
which they took place, and as there was no evidence to control
his finding that the stock when purchased or sold on the plaintiff's
account was delivered as required by said rules, the refusal to
rule in accordance with the following requests was justified.

"1. Upon all the evidence in the case as a matter of law, the
defendants have failed to prove that they made actual purchases
and sales of the stocks which the plaintiff ordered them to buy
and sell for him.

"2. Upon all the evidence in the case as a matter of law, the
defendants have failed to prove that they carried the stocks, which
the plaintiff ordered them to buy and carry for him, until he ordered
them to sell the same.

"3. The burden of proof is on the defendants to show by pre-
ponderance of the evidence that they made actual purchases and
sales upon the plaintiff's orders.

"4. The burden of proof is on the defendants to show by a
preponderance of the evidence that they actually carried the
stocks which the plaintiff ordered them to carry for him."

The judge was not required to give these requests, because upon
the written contracts embodied in the receipts and orders the
defendants did not agree to make actual deliveries and sales, as
distinguished from those made in accordance with the rules and

regulations of stock exchanges, which rules and regulations were embodied in the contract between the parties; and for the same reason the defendants were not obliged to carry the stocks except such as were delivered to them under said rules and regulations. As the obligation did not exist, the burden of proof relating thereto was not relevant to any issue. The case is distinguishable upon its facts from *Crehan* v. *Megargel*, 235 Mass. 279.

The plaintiff's motion that a judgment be ordered in his favor was refused properly. The finding for the defendants was warranted because of the specific findings of the auditor that the defendants fulfilled the contracts contained in the receipts and in the orders of purchase and sale, in accordance with their terms.

The remaining request, that the release given by the plaintiff to the defendants terminated the defendants' liability at that time, was immaterial to any issue tried. The plaintiff did not seek to recover for transactions arising before the release was delivered. The defendants founded no claim thereon. Other grounds of defence which have been urged need not be considered.

No error appearing, in accordance with the terms of the report judgment must be entered for the defendants.

*So ordered.*