### MAX L. WALTERS *vs.* ARTHUR L. ALBEE & others.

Suffolk.    March 19, 1923. — May 24, 1923.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Stockbroker. Contract,* Performance and breach.

Finding by an auditor, to whom was referred an action by a customer against a firm of stockbrokers for alleged breach of a contract by the defendants in transactions with the plaintiff to make actual purchases and sales and actual deliveries of securities, that the contract of the parties provided that the plaintiff's orders for purchases and sales of stocks would be executed according to the customs and rules of the New York Stock Exchange; that the orders were so executed; that the stocks purchased or sold were delivered in accordance with these rules and customs, and that the defendants fulfilled their contract, are not shown to be wrong by the following answer by a defendant to an interrogatory propounded to him by the plaintiff: " I am informed that the plaintiff was told that the defendants were members of the Boston Stock Exchange and correspondents of a New York Exchange firm, and that all transactions with the plaintiff would be executed on one or the other of these exchanges, and that no business would be transacted except in accordance with the rules of these exchanges and by the actual purchase and sale of securities."

It appearing that the defendants performed the contract between them and the plaintiff in accordance with the rules of the stock exchange through which the transactions, to the knowledge of the plaintiff, were to be performed, judgment was ordered for the defendant. Following *Weisberg* v. *Hunt,* 239 Mass. 190.

CONTRACT against a firm of stockbrokers, with a declaration in two counts, the first count being under the wagering contracts statute (R. L. c. 99, § 4; St. 1919, c. 247), and the second count (upon which alone the plaintiff relied at the trial) being upon an account annexed for three items of " money paid," amounting in all to $1,450. Writ dated December 10, 1919.

The action was referred to an auditor. In his report the auditor stated: " The plaintiff seeks to recover money paid

by him to defendants, who were stock brokers, as margins for the purchases and sales of stocks. The plaintiff elects to stand upon the second count in his declaration, and relies wholly on the alleged failure of defendants to perform their contracts with him. The plaintiff does not make any claim under statutes, nor does he claim that the transactions are in any way illegal."

When the action came on for trial, it was withdrawn from the jury by agreement of the parties and was submitted to *Callahan*, J., without a jury, upon the auditor's report, interrogatories propounded by the plaintiff to one of the defendants and his answers thereto, and " confirmation slips." Material facts and rulings by the judge are described in the opinion. There was a finding for the plaintiff in the sum of $1,450 and interest from the date of the writ, and the judge reported the action for determination by this court.

The case was submitted on briefs.

*J. Cavanagh*, for the defendants.

*W. R. Bigelow*, for the plaintiff.

CARROLL, J. The plaintiff seeks to recover money paid by him to the defendants, who were stockbrokers, as margins for the purchase and sale of stocks. The case was referred to an auditor, and afterwards was heard before a judge of the Superior Court on the report of the auditor, interrogatories propounded by the plaintiff to one of the defendants, and his answers thereto, and the " confirmation slips." The judge ruled that the plaintiff was entitled to recover and reported the case on the stipulation: " If my ruling on the issue of liability is erroneous, there is to be a new trial, unless, as a matter of law, I should have ruled the plaintiff was not entitled to recover, in which event judgment is to be entered for the defendants. If my ruling on the issue of liability be correct, and if I have applied the correct measure of damages, judgment is to be entered for the plaintiff in the sum of $1,450, with interest from December 10, 1919. If my ruling on the measure of damages be erroneous and if the plaintiff is entitled to recover, there is to be a new trial on that issue under an agreement of the parties that the

case should be recommitted to the auditor to ascertain the damages. If I should have admitted the evidence offered by the defendants, that they were actuated in good faith and believed that all purchases and sales were executed by the New York brokers by the actual receipt and delivery of the actual number of shares, as hereinbefore set forth, there is to be a new trial."

The auditor's report shows that the plaintiff made no claim that the transactions were illegal and did not seek to recover " under statutes." He relied on the second count of his declaration, this being on an account annexed for money paid.

The auditor found that the plaintiff paid the defendants $1,450, as set out in the declaration, and in October and November, 1919, gave them written orders to buy and sell different stocks dealt in on the New York Stock Exchange. The defendants were not members of that exchange but were members of the Boston Stock Exchange, and when orders were given with reference to the New York Stock Exchange they telephoned to a broker who was a member; and when the order was executed a confirmation slip was sent to the plaintiff in each case. At the time the account was opened the plaintiff was informed that the defendants were not members of the New York Stock Exchange and carried on their New York business through brokers who were members of that exchange. On each confirmation slip delivered to the plaintiff the name of the New York broker by whom the transaction was carried out appeared in abbreviated form. It was stated in these slips, " It is agreed between customer and undersigned brokers " that all orders were to be performed subject to the rules and customs of the exchange and its clearing house, if any, where they were to be executed, " with the distinct understanding that actual delivery is contemplated; " that the security carried in the customer's marginal account could be loaned or pledged by the broker, and that the broker could close the account by buying or selling at public or private sale, without further call or notice to the customer. Monthly accounts of all sales and purchases, showing stocks

carried for the plaintiff, were sent to him. In November, 1919, the plaintiff was informed by the defendants that the stock market " was breaking badly," and he was requested " to put up more margin or else run the risk of being sold out." He did not put up more margin, and the securities carried for him were sold. It was agreed that according to the rules and customs of the New York Stock Exchange, deliveries of one hundred share lots were made through the clearing house, and deliveries of lots less than one hundred shares were made direct between the brokers. It was found by the auditor that, when orders related to one hundred share lots, deliveries were made through the clearing house; and where orders were for less than one hundred shares, in some cases, certificates of shares, were delivered to or by the New York broker; " but in other cases, where there were other transactions than those relating to plaintiff's orders between the New York broker and the broker from whom he bought or to whom he sold, certificates were delivered only to balance the account of shares between the brokers." There was no evidence before the auditor, showing the obligations resting on the New York broker to deliver certificates to persons other than the defendants, and there was no evidence to show whether the New York broker had in his possession or control at all times, available for delivery, certificates for all stocks which he purported to be carrying for all his customers. It was further found by the auditor that it was intended by the plaintiff that his orders should be performed according to the customs and rules of the New York Stock Exchange; that the orders were so executed, and the stock was delivered as required by the rules and customs of that exchange; that the defendants fulfilled their contract with the plaintiff in executing the orders and delivering the stock in accordance with the rules and customs of the New York Stock Exchange, and found for the defendants. He also made an alternative finding: " If I am in error in the construction of the contract above adopted, and it be held as a matter of law that defendants, in order to establish the performance of their contracts with plaintiff, must show that in case of each purchase or sale there was delivery of a cer-

tificate for the number of shares bought or sold, or must show that the New York broker had on hand at all times certificates of stock sufficient in amount to meet the claim of all his customers, then I find defendants have not performed their contracts with plaintiff, and I find for the plaintiff the sum of $1,450 with interest from the date of the writ."

In answer to Interrogatory 9, the defendant Albee answered, " I am informed that the plaintiff was told that the defendants were members of the Boston Stock Exchange and correspondents of a New York Exchange firm, and that all transactions with the plaintiff would be executed on one or the other of these exchanges, and that no business would be transacted except in accordance with the rules of these exchanges and by the actual purchase and sale of securities."

In the Superior Court the defendants offered to show the nature of each transaction executed through the New York Stock Exchange or through New York brokers dealing in odd lots, as described in the auditor's report, with a view of establishing the actual loss sustained by the plaintiff. This offer was made upon the issue of damages and was rejected by the court. The defendants also offered to show that in all their transactions they acted in good faith and believed that all purchases and sales were executed by the New York brokers, members of the New York Stock Exchange, by the actual receipt and delivery of certificates for the number of shares bought or sold by the plaintiff. This offer was rejected.

The plaintiff does not contend that the transactions were illegal. He does not rely on the violation of the statute. He contends that actual purchases and sales were intended by both parties and actual deliveries contemplated; that the defendants failed to carry out this contract, and that the mere execution of orders according to New York Stock Exchange rules and customs was not an actual delivery and was in violation of the contract made with the plaintiff by the defendants. The findings of fact by the auditor were that the contract of the parties provided that the plaintiff's orders for the purchase and sale of stocks would be executed according to the customs and rules of the New York Stock

Exchange; that the orders were so executed; that the stocks purchased or sold were delivered in accordance with these rules and customs, and that the defendants fulfilled their contract. The confirmation slips sent to the plaintiff by the defendants on the completion of each transaction, provided that the rules and customs of the stock exchange were to govern the purchase and sale of stocks. The defendants' answer to the ninth interrogatory is not sufficient to show that the findings of the auditor were wrong. It is expressly stated that the business of the parties was to be carried on according to the rules of the stock exchange, and the reference to the actual purchase and sale of stocks is to be construed together with that statement. While actual sales and purchases were to be made, they were to be made according to the rules, and this provision of the contract was carried out.

It was decided in *Weisberg* v. *Hunt*, 239 Mass. 190, where the stock gambling statute was not involved, that a valid contract for the sale and purchase of stocks could be made with reference and subject to the rules of the stock exchange; see *Hall* v. *Paine*, 224 Mass. 62, where it was said at page 73: " Doubtless, when one employs another to trade for him in a particular market, he impliedly authorizes the dealings to be conducted according to the established usages of that particular market; " see also *Fiske* v. *Doucette*, 206 Mass. 275, 282. In *Weisberg* v. *Hunt, supra,* the receipts given the plaintiff recited that " all stocks bought or sold may be received or delivered through the Clearing House, according to the rules of the Exchange, and such a delivery shall be a good delivery." The different phraseology in the confirmation slips in the case at bar, that all " orders for the purchase or sale of any article are received and executed subject to the rules and customs of the Exchange . . . where they are executed, and with the distinct understanding that actual delivery is contemplated," does not distinguish it from *Weisberg* v. *Hunt*. In each of these cases the rules of the stock exchange were to govern the sale and purchase of the stock. The execution of the contract and the delivery of the stock were to be according to the rules of the exchange.

The action is not brought under R. L. c. 99, § 4, St. 1919,

c. 247; and cases like *Fiske* v. *Doucette*, 206 Mass. 275, *Adams* v. *Dick*, 226 Mass. 46, *Barrell* v. *Paine*, 236 Mass. 157, are not applicable. The plaintiff's action is at common law for the defendants' breach of the legal contract. As there was no evidence to control the auditor's finding that the plaintiff intended his orders should be executed according to the rules and customs of the New York Stock Exchange, that they were so executed, and the stocks when purchased and sold were delivered as required by these rules and customs, the defendants fulfilled their contract and the plaintiff cannot recover. The case is governed by *Weisberg* v. *Hunt*. As matter of law, the defendants are entitled to judgment.

It is unnecessary, therefore, to consider the rulings of the trial judge on the question of the measure of damages and the rulings on the evidence offered to show the defendants' good faith. According to the terms of the report, judgment is to be entered for the defendants.

<div align="right">

*So ordered.*