GEORGE MARSHALL *vs.* FRANK E. JAMES & others.

Suffolk.    March 12, 1925. — May 20, 1925.

Present: RUGG, C.J., CROSBY, CARROLL, WAIT, & SANDERSON, JJ.

*Wagering Contract. Stockbroker. Evidence*, Presumptions and burden of proof. *Conflict of Laws.*

An auditor, to whom was referred an action of contract under R. L. c. 99, §§ 4–7, to recover payments made in 1911 to stockbrokers in Boston relating to transactions in the city of New York, found that the transactions were "by actual delivery in New York of certificates borrowed by the defendants for the purpose or by the establishment of balances as the result of which the New York brokers who executed the sale had the legal right to receive from the defendants the certificates to make good the execution"; that the defendants had at all times under their control sufficient stocks to take care of the legitimate demands of their customers, but it did not appear that the defendants' New York brokers were so situated, and the defendants failed to establish this fact; that there was no evidence of the ability of the New York brokers to deliver what "their customers might properly have required." Most of the transactions were short sales in which the plaintiff ordered

sold securities which he did not own. The judge, who heard the action without a jury, found for the plaintiff. *Held,* that

(1) On these findings of the auditor, the trial judge was warranted in finding that the defendants had not sustained the burden of showing that there were actual purchases and sales as contemplated by the statute;

(2) The plaintiff's rights were to be determined by the law of this Commonwealth, and the law of New York was immaterial.

CONTRACT under R. L. c. 99, §§ 4–7, upon an account annexed for money had and received to the plaintiff's use by the defendants, a firm of stockbrokers doing business in Boston under the name and style of Richardson, Hill and Company. Writ dated August 9, 1913.

In the Superior Court, the action was referred to an auditor, material findings by whom are described in the opinion. The action was heard by *Quinn,* J., without a jury, upon the auditor's report and other evidence. The judge found for the plaintiff in the sum of $3,469.32. The defendants alleged exceptions.

*A. Lincoln,* for the defendants.

*W. R. Bigelow,* for the plaintiff.

CARROLL, J. This action of contract under R. L. c. 99, §§ 4–7, (see now G. L. c. 137, §§ 4–7,) is to recover payments made on wagering transactions in the year 1911. The case was referred to an auditor and was tried before a judge of the Superior Court without a jury, who found for the plaintiff.

The auditor found that the plaintiff did not concern himself whether the defendants actually made purchases and sales, and, in effect, found that the plaintiff had no positive, affirmative intention as to purchases and sales. The trial judge so found. Most of the transactions were short sales in which the plaintiff ordered securities sold, which he did not own. Under § 6 of R. L. c. 99, if the plaintiff did not own the securities at the time of the contract of sale, or of giving the order to sell, this fact is *prima facie* evidence within the meaning of § 4, that the plaintiff intended there should be no actual purchase or sale and that there was reasonable cause to believe that said intention existed. The plaintiff in numerous instances did not own what he attempted to sell. Under the statute, therefore, he intended

there should be no actual sales of the certificates in question. He made out a *prima facie* case and the burden was upon the defendants to prove that actual purchases or sales were made, to escape the liability imposed by the statute. *Fiske* v. *Doucette*, 206 Mass. 275. *Greene* v. *Corey*, 210 Mass. 536, 546. *Adams* v. *Dick*, 226 Mass. 46, 53. *Houghton* v. *Keveney*, 230 Mass. 49.

The more difficult question is whether the defendants have sustained the burden of showing that they made actual purchases and sales of the securities. It was found that in the transaction conducted on the Boston Stock Exchange, the defendants did make actual purchases and sales; but in the dealings on the New York Stock Exchange the judge found there were no actual purchases and sales and found for the plaintiff. The defendants do not contend that St. 1919, c. 247, passed after this action was brought, has any effect upon the plaintiff's rights.

With reference to the transactions on the New York Stock Exchange, it was found by the auditor that these transactions were settled by the New York brokers employed by the defendants, with the persons with whom these brokers dealt, but the manner in which they dealt did not appear; that "Where the transactions were sales in New York by the defendants, they were settled in the same manner by actual delivery in New York of certificates borrowed by the defendants for the purpose or by the establishment of balances as the result of which the New York brokers who executed the sale had the legal right to receive from the defendants the certificates to make good the execution"; that the defendants had at all times under their control sufficient stocks to take care of the legitimate demands of their customers, but it did not appear that the defendants' New York brokers were so situated, and the defendants failed to establish this fact; that the same was true of the second set of brokers with whom the defendants' New York correspondents dealt; that there was no evidence of their ability to deliver what "their customers might properly have required."

On these findings of the auditor, the trial judge was warranted in finding that the defendants had not sustained the

burden of showing that there were actual purchases and sales as contemplated by the statute. Under the statute we are considering and before the amendment of St. 1919 c. 247, § 1, was enacted, a mere balancing of transactions, as found by the auditor, did not amount to an actual purchase or sale of the securities. As was stated in *Barrell* v. *Paine,* 242 Mass. 415, at page 425, the judge could find "that the defendants' correspondents or agents from the first transaction to the last, and until the stocks were bought in or sold on the orders of the plaintiffs did not have a sufficient number of shares in their possession or control to satisfy the demands of all their customers."

The defendants may have acted in good faith and intended that actual sales and purchases should be made; but it might properly have been found that they did not sustain the burden of proof resting upon them, without showing their actual purchases and sales in detail, however difficult it may have been to follow each transaction through all the brokers executing the orders. The course of business on the New York Stock Exchange, as shown by the auditor, brings the case within the principle established in *Barrell* v. *Paine, supra. Adams* v. *Dick,* 226 Mass. 46, 54–56. *Fiske* v. *Doucette,* 206 Mass. 275. The affirmative defence, that for the account of the plaintiff the defendants made "in accordance with the terms of the contract or employment, personally or by agent," an actual purchase or sale of said securities, was not established.

The defendants rely on *Zembler* v. *Fitzgerald,* 234 Mass. 236, *Adams* v. *Hayden,* 236 Mass. 454, *Weisberg* v. *Hunt,* 239 Mass. 190, *Walters* v. *Albee,* 245 Mass. 216. In *Zembler* v. *Fitzgerald* the plaintiff had a positive intention that the orders to buy or sell should be executed, and that actual purchases and sales should be made by the defendants. In *Adams* v. *Hayden,* it was found that "the plaintiff did not at any time intend that there should not be any actual purchases or sales by the defendants, of the stocks he ordered bought or sold." (page 460.) *Weisberg* v. *Hunt* was an action at common law. The wagering statute was not involved. It was said in that case at page 198: "It was decided in *Fiske* v.

*Doucette,* 206 Mass. 275 (a suit under the statute just referred to), that purchases and sales of stock therein described and made through a clearing house by the balancing of transactions made in a stock exchange did not constitute 'actual' purchases and sales of the securities.   To the like effect are *Greene* v. *Corey,* 210 Mass. 536, and *Adams* v. *Dick,* 226 Mass. 46, 53.   But where the statute above referred to is not involved, a valid contract may be made with reference and subject to the rules of a stock exchange."   *Walters* v. *Albee* was also an action at common law.   At page 221 it was stated that "where the ·stock gambling statute was not involved . . . a valid contract for the sale and purchase of stocks could be made with reference and subject to the rules of the stock exchange."

The judge was right in ruling that the law of New York was unimportant, in that it failed to show any interpretation of the words "actual purchases or sales," as used in the Massachusetts statute.   "The defendants did business in Boston where the plaintiffs dealt with them, and, even if the alleged purchases and· sales were made through the defendants' agent or agents in New York, the plaintiffs are within the protection of our laws under which their rights are to be ascertained and established."   *Barrell* v. *Paine, supra,* page 425.

The plaintiff's twelfth request, "The words 'a valid contract therefor' in § 4 of G. L. c. 139 refer to contracts for future deliveries and not for present sales," was given.   The judge in his statement of findings and rulings said that the provisions of § 4 regarding the making of a valid contract of purchase or sale are not applicable to transactions of the nature of those here in issue.   The expression "valid contract of purchase or sale" of stocks, as distinguished from actual purchase or sale, was considered in *Adams* v. *Dick, supra,* pages 55, 56.

We find no error in the ruling of the judge or in the conduct of the trial.

*Exceptions overruled.*